Opinion issued March 31, 2011. 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO.
01-09-00634-CR

———————————

Joseph Wayne Smith, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 248th District
Court  

Harris County, Texas



Trial Court Case No. 1161449



 

O P I N I O N 

          A jury convicted Joseph Wayne Smith of
murder and assessed his punishment at twenty-five years’ confinement.  See Tex. Penal Code Ann. § 19.02(b) (West 2003).  On appeal, Smith contends that: (1) the evidence is factually insufficient
to support his conviction; (2) the
evidence is legally
and factually insufficient to support the jury’s negative finding on the issue
of sudden passion during
the punishment phase; (3) the trial court erred in excluding testimony about
the complainant’s prior violent acts; (4) the trial court erred in sustaining
the prosecutor’s objections to a witness’s opinion that the complainant was a
violent person; and (5) the trial court deprived Smith of his constitutional
right to due process of law and his right to confront the witnesses by
excluding evidence of complainant’s tattoos.  

          We
hold that the evidence was legally and factually sufficient to support Smith’s
conviction, the evidence is legally and factually
sufficient to support the jury’s negative finding on the issue of sudden
passion, the trial court did not err in excluding the complainant’s prior
violent acts, any error by the trial court in sustaining the prosecutor’s objections
to the witness’s opinion was harmless, and the trial court did
not deprive Smith of due process or his right to confront the witnesses.  We therefore affirm. 

Background

          The complainant, Anthony Hawkins, and
his fiancée, Trinet Fields, shared an apartment at the Los Arcos apartment complex with Smith and his girlfriend, Yereter Bernardez.  In March, Hawkins and Fields told Smith and
Bernardez that they were moving out of the apartment because the environment in
the apartment was hostile.  Fields moved
their things out of the apartment, and Fields, who was the named tenant on the
lease, turned her key in to the apartment office.  The following day, the office manager at the
complex informed Smith and Bernardez that they also had to move out of the
apartment.   

          At
8:30 p.m. that evening, Hawkins, Fields, and Mary McNulty-Brown drove Fields’s rented
red Impala to visit Mary’s sister, Ashley McNulty-Brown, at the Stonegate
Apartment Complex.  Upon arriving, they first
went to the apartment of Fields’s friend, Terrance Foley.  Foley was also a friend of Smith.  Upon leaving Foley’s apartment, Fields heard
a loud noise of something suddenly deflating and noticed that someone had
stabbed all four tires of her Impala. 
Hawkins and Foley searched the area for the person who had stabbed the
tires.  Mary, accompanied by Fields and Ashley,
drove the Impala toward the complex’s exit gate.  Before the Impala reached the gate, Smith
blocked it with his purple Nissan Maxima. 
Smith exited the Maxima, walked toward the Impala with an angry
expression on his face, and looked inside the car.  Mary reversed the Impala and parked it in a
parking spot.  Smith returned to his
Maxima and drove away.  Fields used a
walkie-talkie to warn Hawkins that Smith was in the parking lot.  She and the other women saw Hawkins run after
Smith’s Maxima and out of their view.  

            Minutes later, Hawkins ran back to the Impala.  He told the women that Smith had stabbed
him.  Following behind Hawkins, Smith
approached the Impala.  He again attempted
to stab Hawkins with a knife he had in his hand.  Hawkins jumped back and fell into the car.  Mary placed him in the passenger-side
seat.  According to Fields and the other
women, Hawkins was unarmed that evening. 
Smith then ran away from the car. 
Hawkins was bleeding from his left abdomen, and Fields called 911.  Hawkins stopped breathing and died shortly
thereafter at the hospital. 

          Robert
Bailey, a security guard at Stonegate, observed some of the events associated
with Hawkins’s death.  He saw the women
around the Impala, heard air coming out of the car’s tires, and saw holes or
slashes to the tires.  He witnessed a
black car cut off the Impala as it moved to the exit of the apartment complex,
and heard male and female voices screaming. 
He saw two men backing away from the Impala.  One of these men held a knife in his
hand.  He asked the two men to leave, and
they got into the black car and left the property.  After he noticed a man in the Impala leaning
back in the car in pain, he called 911. 
He testified that the man in the Impala did not have a knife in his
hand.  Houston Police Officers J. Pena
and C. Abbondandolo investigated Hawkins’s death.  They found no knives at the crime scene.  

          Dr.
Stephen Wilson, a medical examiner for the Harris County Medical Examiner’s
Office, performed an autopsy on Hawkins the day after his death.  Hawkins’s only injury was a single stab wound
to the left side of the chest.  He had no
other fresh abrasions or lacerations.  He
concluded that the cause of Hawkins’s death was a single stab wound to the left
side of his chest which perforated his heart and penetrated his left lung.  Hawkins had alcohol and methamphetamine in
his system when he died.

          Smith
testified on his own behalf during trial. 
Around 3:30 p.m. on the day of Hawkins’s death, Bernardez informed Smith
that they had to move out of the Los Arcos apartment by 5 p.m. because Fields
had argued with the apartment manager and had thrown her keys at the leasing
agent.  Smith and Bernardez packed their
belongings with the help of Smith’s mother. 
While they were packing, Smith’s mother had a loud phone conversation
with Fields.  Hawkins then phoned and
spoke with Smith, but Smith hung up on Hawkins because Hawkins was hostile
during the call.  According to Smith,
Hawkins was a very violent and aggressive person.  

          Around
8:30 or 9:00 p.m., Smith left the Los Arcos apartment in his Maxima with
Bernardez, her three-year-old son, and her friend, Keisha Dupree.  While Smith was en route to Keisha’s friend’s
house, Foley called and asked whether Smith would help move things around his
apartment at Stonegate.  Smith proceeded
to Stonegate and entered the complex’s gate using a key code Foley had
provided.  When he entered the parking
lot, he noticed Fields’s red Impala parked near Foley’s apartment.  Bernardez told Smith that they should leave
to avoid any further confrontation with Fields and Hawkins.  As Smith’s Maxima approached the exit gate of
the complex at a slow rate of speed, Hawkins, looking “pissed off” and angry,
ran toward it and grabbed Smith’s steering wheel, causing the car to collide
with several vehicles parked near the gate. 
Hawkins punched Smith in the face and tried to pull him out of the
Maxima.  

          Once
the Maxima came to a stop, Smith, shocked and scared, hit Hawkins with the
driver-side door, caught another blow to the face, and tackled Hawkins.  Both men fell to the ground.  Smith testified that it was necessary to exit
the Maxima and to fight Hawkins because: (1) he was being punched, hit, rushed,
and “aggressed”; (2) he “[k]new there was no other way [he] could get out of
the apartments because [he] had to stop at the gate still to push the code to
get out”; and (3) he had to protect the two women and the small child in the
car, as well as himself. 

          Smith
further testified that Hawkins swung a knife at his stomach.  Smith dodged Hawkins’s knife and hit him
twice in the chin.  Hawkins tried to stab
Smith in the neck, but Smith grabbed Hawkins’s arm, which held the knife.  Smith pulled his own knife out of his pocket,
and stabbed Hawkins in the chest one time. 
After he stabbed Hawkins, Smith ran and jumped over the apartment
complex fence.  He denied that he
returned to Fields’s Impala after the fight. 
He testified that he did not see anyone in or near the Impala when he
drove by it before his fight with Hawkins. 
Smith found his Maxima parked on the street outside of the complex, with
Bernardez and Keisha waiting inside.  

          Shortly
after the incident, Smith fled to Victoria, Texas.  When he found out that Hawkins had died, he
returned to Houston and turned himself in to the police. Bernardez and Keisha
also testified at trial.  They testified
that Hawkins ran at the Maxima, grabbed the steering wheel, and hit several
parked cars. A fight ensued between Hawkins and Smith.  Keisha testified that Hawkins held a knife in
his hand during the fight, but Bernardez testified that she only saw the two
men use their fists during the portion of the fight she witnessed.  Neither Keisha nor Bernardez witnessed Smith
stab Hawkins.  At some point during the
fight, Bernardez drove Smith’s car outside the apartment complex and parked it
on a nearby street.  They stated that
Smith appeared shaken up when he returned to the Maxima after the fight.  

Sufficiency of
the Evidence of Jury’s Rejection

of Smith’s
Defensive Claims

          In his first issue, Smith contends that the evidence is
factually insufficient to support his conviction for murder because he acted in
self-defense and in the defense of a third person.  See Tex. Penal
Code Ann. §§ 2.03, 9.02, 9.32, 9.33 (West
2003). 
We disagree.  

 

          Standard of Review for
Self-Defense and Defense of a Third Person 

          “[T]he
Jackson v. Virginia legal sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Brooks v. State, 323 S.W. 3d 893, 895 (Tex. Crim. App. 2010)
(referring to Jackson v. Virginia,
443 U.S. 307 (1979)).   Under this
standard, evidence is insufficient to support a conviction if, considering all
the record evidence in the light most favorable to the verdict, no rational
fact finder could have found that each essential element of the charged offense
was proven beyond a reasonable doubt.  See Jackson, 443 U.S. at 319;
In re Winship, 397 U.S. 358, 361 (1970); Laster v. State, 275
S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007).  Viewed in the light most favorable to
the verdict, the evidence is insufficient under this standard when either: 
(1) the record contains no evidence, or merely a “modicum” of evidence,
probative of an element of the offense; or (2) the evidence conclusively
establishes a reasonable doubt.  See Jackson, 443 U.S. at
314, 319 n.11, 320; Laster, 275 S.W.3d at 518; Williams, 235
S.W.3d at 750.  An appellate court may not re-evaluate the weight and
credibility of the record evidence and thereby substitute its own judgment for
that of the fact finder.  Williams, 235 S.W.3d at 750.

          Self-defense and defense of a third person are defenses to
prosecution under Penal Code section 2.03. 
See Tex. Penal Code Ann. §§
2.03, 9.02, 9.32, 9.33.  A
defendant has the burden of producing some evidence to support a claim of a
section 2.03 defense.  Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003).  Once the
defendant produces that evidence, the State bears the ultimate burden of
persuasion to disprove the raised defense. 
Id. at 594–95.  The burden of persuasion does not require that
the State produce evidence, but it requires that the State prove its case
beyond a reasonable doubt.  Id. at 594; see also Saxton v. State,
804 S.W.2d 910, 912 nn. 3 & 4 (Tex. Crim. App. 1991) (holding that State
did not have to produce evidence disproving or refuting claim of self-defense,
even if all evidence supporting defense was uncontradicted and consistent); Tex. Penal
Code Ann. § 2.03(d)
(“If the issue of the existence of a defense is submitted to the jury, the
court shall charge that reasonable doubt on the issue requires that the
defendant be acquitted.”).  If the jury
finds the defendant guilty, then it implicitly finds against the defensive
theory.  Zuliani, 97 S.W.3d at 594.  

          Because the State bears the burden of
persuasion to disprove a section 2.03 defense by establishing its case beyond a
reasonable doubt, we review
both legal and factual sufficiency challenges to the jury’s rejection of such
a defense under the Jackson v. Virginia standard.  See
Brooks, 323 S.W.3d at 895 (holding that Jackson
v. Virginia sufficiency standard is only standard that reviewing court
should apply in determining whether evidence is sufficient to support each
element of criminal offense that State is required to prove beyond reasonable
doubt).  

          Applicable
Law 

          A person commits murder if he
intentionally or knowingly causes the death of an individual, or intends to
cause serious bodily injury and commits an act clearly dangerous to human life
that causes the death of an individual.  
See Tex. Penal Code Ann.
§§ 19.02(b)(1),
19.02(b)(2) (West 2003).  The Penal Code,
however, provides that “a person is justified in using force against another
when and to the degree the actor reasonably believes the force is immediately
necessary to protect the actor against the other’s use or attempted use of unlawful
force.” Tex. Penal Code Ann. § 9.31(a).  Deadly force in self-defense is justified
when a person reasonably believes the force is immediately necessary to protect
the actor against the other’s use or attempted use of unlawful deadly force or
to prevent the other’s imminent commission of aggravated kidnapping, murder,
sexual assault, aggravated sexual assault, robbery, or aggravated robbery.  Id. § 9.32; see also Schiffert v. State, 257 S.W.3d 6, 14 (Tex. App.—Fort Worth
2008, pet. ref’d).  

          Similarly, a person is justified under
section 9.33 in using force
or deadly force to protect a third person if:

(1)
under the
circumstances as the actor reasonably believes them to be, the actor would be
justified under Section 9.31 [self-defense] or 9.32 [deadly force in defense of
person] in using force or deadly force to protect himself against the unlawful
force or unlawful deadly force he reasonably believes to be threatening the
third person he seeks to protect; and

 

(2) the actor reasonably believes that
his intervention is immediately necessary to protect the third person.  

 

Tex.
Penal Code Ann. § 9.33.  A person defending on the grounds of defense
of a third person stands in the shoes of the third person.  Hughes v. State, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986).  “So long as the accused reasonably believes
that the third person would be justified in using [force] to protect himself,
the accused may step in and exercise [force] on behalf of that person.”  Id. 
Thus, the use of force to protect a third person is justified in any
situation in which the third person would be justified in using force to
protect himself.  Id.

          A “reasonable belief” is defined as
one that would be held by “an ordinary and prudent man in the same
circumstances as the actor.”  Tex. Penal Code Ann. §
1.07(a)(42) (West Supp. 2010).  “Deadly force” is force “intended or known by the actor to
cause, or in the manner of its use or intended use is capable of causing, death
or serious bodily injury.”  Tex. Penal Code Ann. § 9.01(3) (West Supp.
2010).  “Serious bodily injury” is an
injury that creates a “substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any bodily member or organ.”  Id.
§ 1.07(a)(46). 

          

 

          Analysis 

          Smith admits that he stabbed
Hawkins in the chest.  The medical
examiner concluded that the wound caused
Hawkins’s death.  Smith maintains,
however, that he stabbed Hawkins in self-defense and in defense of Bernardez,
her child, and Keisha.  Keisha, Bernardez,
and Smith testified that they tried to exit the apartment complex after they
saw Fields’s Impala in the parking lot. 
Hawkins then initiated an altercation with Smith by grabbing the
steering wheel of Smith’s Maxima and forcing it to collide with several parked
cars.  Smith testified that it was
necessary to exit his Maxima and to fight Hawkins because: (1) he was being
punched, hit, rushed, and “aggressed”; (2) he “[k]new there was no other way
[he] could get out of the apartments because [he] had to stop at the gate still
to push the code to get out”; and (3) he had to protect the two women and small
child in the car and himself.  Keisha and
Smith testified that Hawkins held a knife in his hand during the fight.  Smith claimed that he stabbed Hawkins only
after Hawkins attempted to stab him in the neck, and he feared for his life as
he jumped over the apartment complex fence. 
He also observes that none of the State’s witnesses observed the fight
between Hawkins and him and the stabbing of Hawkins.

          The
jury’s decision to reject Smith’s defensive claims, however, ultimately hinges
on the credibility of the witnesses.  “As
factfinder, the jury is entitled to judge the credibility of witnesses, and can
choose to believe all, some, or none of the testimony presented by the parties.”  Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  The statements of the defendant and his
witnesses do not conclusively prove a claim of self-defense or defense of a third
party.  See Denman v. State, 193 S.W. 3d 129, 132–33 (Tex. App.—Houston
[1st Dist.] 2006, pet. ref’d) (finding evidence sufficient to support
conviction for aggravated assault under Jackson
v. Virginia standard despite defendant’s claim of self-defense, which was
based on testimony of defendant and other witnesses who stated that complainant
had assaulted or threatened defendant on prior occasions); see also Sells v. State, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003)
(holding that only evidence weighing against jury finding that defendant
entered home with no specific intent to commit sexual assault was defendant’s
own statement, and this was not enough to render evidence insufficient).  

          Here, the jury chose not to believe Smith and his witnesses’ testimony
that he had acted in defense, either of himself or third persons, when he
stabbed Hawkins.  The testimony of Smith
and his witnesses, in light of the other evidence presented at trial, does not
render the evidence in this case insufficient to support the jury’s
verdict.  See Chambers,
805 S.W.2d at 461; see also Denman, 193 S.W.3d at 132–33. 

          The other evidence includes the State’s witnesses, the physical
evidence, and Smith’s flight after Hawkins’s death, all of which undermined
Smith’s defensive claims.  Fields, Mary,
and Ashley testified that Hawkins did not carry any weapon on that night.  The security guard testified that Hawkins did
not have a knife in his hand when he observed him sitting in pain in the
Impala.  Officers Pena and Abbondandolo
found no weapons at the crime scene.  Smith
denied the presence of anyone else at the Impala when he and Hawkins approached
it, but the security guard verified that the women were present.  This testimony and the physical evidence were inconsistent
with Smith’s version of the events that took place.  See
McClesky v. State, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006,
pet. ref’d) (because only defendant’s gun was found at scene of shooting,
physical evidence was not consistent with defendant’s claims that complainant had
threatened her with his gun).  Fields, Mary, and Ashley also testified
that Smith chased Hawkins after Smith stabbed him, and attempted to stab him
again when he returned to the Impala.  

          Based
on this other evidence, the jury could have reasonably concluded that Smith’s
conduct in chasing Hawkins and attempting to stab him a second time was
inconsistent with his defensive claims.  See Cleveland v. State, 177 S.W.3d 374, 387 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d), cert. denied, 547 U.S. 1073, 126 S. Ct.
17742006) (finding that jury could have reasonably concluded that defendant’s
conduct in continuing to stab his wife’s back as she lay bleeding on floor was
inconsistent with his claim of self-defense). 
Finally, Smith’s flight to Victoria after Hawkins’s death is
circumstantial evidence of his guilt.  See Miller v. State, 177 S.W.3d 177, 184
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (finding that flight of
defendant, who claimed self-defense, immediately after shooting and his
attempts to hide evidence constituted circumstantial evidence of his
guilt).  We conclude that the
jury rationally could have found that each element of the charged offense was
proven beyond a reasonable doubt, and rationally could have rejected Smith’s
claims of self defense and defense of a third party. 
See Jackson, 443 U.S. at 319; see
also Zuliani,
97 S.W.3d at 594.  Accordingly, we hold that the evidence
was factually sufficient to support Smith’s conviction for the murder of Hawkins.


Sufficiency of the Evidence of
Sudden Passion

at the Punishment Phase of Trial

          In his fifth and sixth issues, Smith
asserts that the evidence is legally and factually insufficient to support the
jury’s negative finding on the issue of sudden passion at the punishment stage
of his trial.  See Tex. Penal Code Ann. §19.02(a), (d).  We disagree. 


          Standard of Review for Negative
Finding on Sudden Passion

          At the
punishment phase of a murder trial, a defendant may reduce a murder charge from
a first-degree felony to a second-degree felony by proving by a preponderance
of the evidence that “he caused the death under the immediate influence of
sudden passion arising from an adequate cause.” See Tex. Penal
Code Ann. § 19.02(d) (West
2003); see also Hernandez v. State,
127 S.W.3d 206, 211–12 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d)
(holding that defendant bears burden at punishment phase to prove issue of
sudden passion by preponderance of evidence). 
“‘Sudden passion’ means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of
former provocation.”  Tex. Penal
Code Ann. § 19.02(a)(2).  “‘Adequate cause’ means cause that would
commonly produce a degree of anger, rage, resentment, or terror in a person of
ordinary temper, sufficient to render the mind incapable of cool reflection.”  Id. § 19.02(a)(1); see also Hernandez, 127
S.W. 3d at 211 (holding that ordinary anger or causes of defendant’s own making
are not legally adequate causes). 

          In Brooks, the Criminal Court of Appeals held that the Jackson v. Virginia standard is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.  323 S.W.3d at 895.   However, the civil standard, announced in Strener v. Marathon Oil Co., 767 S.W. 2d 686, 690 (Tex. 1989), is
the proper standard to
apply in reviewing a criminal defendant’s legal sufficiency challenge to a
jury’s negative finding for an issue that a defendant has a burden of proof.  Cleveland, 177 S.W.3d at 387–88; see also Nolan v.
State, 102 S.W. 3d 231, 237–38 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d)
(applying civil standard to legal sufficiency challenge to jury’s rejecting
affirmative defense).  The Strener
standard applies to a legal sufficiency review of a jury’s negative answer on
sudden passion during the punishment phase because a defendant bears the burden
to prove sudden passion by a preponderance of the evidence.  See Cleveland, 177 S.W.3d at 390.

          We
examine the record for evidence that supports the negative finding.  See id. at 387; Nolan, 102 S.W.3d at 238.  If no evidence supports the negative finding,
then we examine the entire record to determine whether it establishes the
contrary proposition as a matter of law. 
Cleveland, 177
S.W.3d at 387; Nolan,
102 S.W.3d at 238.  In reviewing the
record, we defer to the fact finder’s determination of the credibility of the
witnesses and the weight to give the evidence. 
Cleveland, 177
S.W.3d at 388–89.

          If the
evidence is legally sufficient, then we turn to factual sufficiency.  As with legal sufficiency, the Jackson v. Virginia standard is not the
standard to use in reviewing a criminal defendant’s factual sufficiency
challenge to the jury’s negative finding of an issue that the defendant had to
prove by a preponderance of the evidence;
rather, the factual sufficiency standard announced in Meraz is appropriate for review of issues, such as affirmative
defenses, on which the defendant has the burden of proof by the preponderance
of the evidence.  See
Brooks, 323
S.W.3d at 924 n.67 ( Cochran, J., concurring); see also Meraz
v. State, 785 S.W.2d 146, 154–55
(Tex. Crim. App. 1990) (holding that the proper standard for review of factual
sufficiency challenges to negative finding on issue that defendant had to prove
by preponderance of the evidence is not Jackson
v. Virginia standard); Zuniga v. State, 144 S.W.3d 477, 482
(Tex. Crim. App. 2004) (holding that Meraz
standard was suitable for sufficiency reviews regarding affirmative
defenses because burden of proof on defendant is preponderance of evidence), overruled on other grounds by Watson v.
State, 204 S.W.3d 404, 416–17 (Tex. Crim.
App. 2006).  Accordingly, we apply the Meraz
standard to situations when the appellate court conducts a factual sufficiency
review of a jury’s negative answer on sudden passion.  Cleveland, 177 S.W.3d at 390–91 (applying the Meraz standard as cited in Zuniga,
177 S.W.3d at 482); see also Brooks, 323
S.W.3d at 924 n.67.

          For a factual
sufficiency challenge, the standard of review is whether after considering all
the evidence relevant to the issue at hand, the judgment is so against the
great weight and preponderance of the evidence so as to be manifestly
unjust.  Meraz, 785 S.W.2d at 154–55.  In the factual sufficiency review of the
evidence, we review all of the evidence neutrally, but we do not intrude on the
factfinder’s role as the sole judge of the weight and credibility given to any
witness’s testimony.  Cleveland, 177 S.W.3d at 390–91.

          Analysis


          Smith contends
that he stabbed Hawkins only after Hawkins provoked him by (1) pulling on
his steering wheel as he exited the apartment complex; (2) forcing his car
to collide with three parked cars; (3) causing extensive damage to his
car; (4) punching Smith with his fists; and (5) threatening his
safety and the safety of three persons in his car.  He points to two prior acts that provide
context for this provocation.  First,
because Hawkins and Fields broke the lease of the apartment they shared with
him, Smith had to move his possessions on short notice.  Second, Hawkins had called him that evening
with a hostile tone.   Smith observes that
no witness contradicts his and his witnesses’ version of these events.  Hawkins’s provocation shocked, surprised, and
scared him.  He was afraid for his life.  The jury rejected Smith’s contention.     

          Examining the record for evidence that
supports the jury’s negative finding on the issue of sudden passion, we conclude
that some evidence exists to support it. 
A defendant may not rely on a cause of his own making, such as
precipitating a confrontation, to support his argument that he acted out of
sudden passion arising from adequate cause. 
Naasz v. State, 974 S.W.2d
418, 420 (Tex. App.—Dallas 1998, pet. ref’d); see also Trevino v. State, 157 S.W.3d 818, 822 n. 4 (Tex. App.—Fort Worth 2005, no pet.)
(noting that even if complainant fired pistol at defendant, that act would not
constitute adequate cause because defendant’s conduct precipitated
complainant’s action).  

          The jury here could have concluded
based on the State’s evidence that Smith precipitated the confrontation that
led to Hawkins’s death.  Fields, Mary and Ashley stated that shortly
after they discovered that someone slashed all the tires of Field’s Impala in
the parking lot of Stonegate, Smith drove up in his Maxima with his high beams
on and blocked their car.  He then got
out of his car and approached them.  At
this point, Fields told Hawkins by walkie-talkie that Smith was in the parking
lot.  Since some evidence exists that
Smith precipitated the confrontation that led to Hawkins’s death, the evidence is legally sufficient to
support the jury’s negative finding on the issue of sudden passion.  See Perez v. State, 323 S.W.3d 298, 305 (Tex. App.—Amarillo 2010, no
pet.) (finding evidence factually sufficient to support jury’s negative finding
on issue of sudden passion because some evidence existed that defendant
initiated confrontation with complainant and others, and this confrontation
resulted in complainant’s death).    

          The evidence
is also factually sufficient to support the jury’s negative finding on the
issue of sudden passion.  As noted, the
jury is the sole judge of the weight and credibility given to any witness’s
testimony.  See Cleveland, 177 S.W.3d at 390–91; see also Trevino, 157
S.W.3d at 822 (holding that jury is free to make its own determination of
defendant’s credibility and reject defendant’s version of events if it did not
believe he was telling truth).  The
jury’s finding on sudden passion here depended largely on accepting Smith’s and
his witnesses’ version of the events. 
The jury could have doubted the story of Smith and his witnesses because
of the testimony of the State’s witnesses and the lack of physical evidence
supporting the version of events related by Smith and his witnesses.  Testimony from the State witnesses concerning
events surrounding Hawkins’s death differed greatly from Smith’s version.  Although Smith maintained that Hawkins
attempted to stab him with a knife after a fight in which the two exchanged
many punches to the face, the police found no knives at the crime scene, and
the medical examiner testified that Hawkins
had no fresh abrasions or lacerations except for the single stab wound to the
chest.  

          In addition
to the testimony he offered, Smith cites the damage to his Maxima and to the
other cars in the apartment parking lot and the fact that no witnesses
contradicted his version of how Hawkins provoked him by forcing his Maxima to collide
with the other cars.  None of this
evidence, however, compelled the jury to find that Smith murdered Hawkins under
the influence of sudden passion, given the version of events that the State’s
witnesses offered—including Smith’s arrival at the scene, slashed tires, and
Smith’s blocking of the vehicle and chasing of an unarmed Hawkins with a
further attempt to stab him.  See Trevino,
157 S.W.3d at 822 (finding evidence sufficient under the Meraz standard even though: (1) defendant testified that he was in
state of terror during murder because complainant shot revolver at him; (2)
police recovered revolver from crime scene; (3) a bullet hole in wall was
present at scene; and (4) witness testified that complainant had previously
pointed gun at defendant when she was angry). 


          After
considering all the relevant evidence, we conclude that the judgment is not so
against the great weight and preponderance of the evidence so as to be
manifestly unjust.  See Meraz, 785 S.W.2d at 54–55.  We hold that the evidence is factually sufficient
to support the jury’s negative finding on the issue of sudden passion.

Prior Acts of
Violence

          In
his second issue, Smith maintains that the trial court abused its discretion in
excluding the testimony of Keisha and her son, Terrell Dupree, relating to
Hawkins’s prior acts of violence.  At
trial, defense counsel proffered the testimony of Keisha and Terrell outside
the presence of the jury.  Terrell
testified that one month before Hawkins’s death, Hawkins hit Keisha in the
face.  Terrell and his brother intervened
to protect their mother.  A fight ensued
between Terrell and Hawkins.  During this
altercation, Hawkins stabbed Terrell in the side.  Terrell testified that he told Smith about
this incident sometime before Hawkins’s murder. The trial court refused to
allow the proffered testimony.  On
appeal, Smith maintains this incident was admissible to show that Smith’s fear of Hawkins
was reasonable or to show that Hawkins was the first aggressor.

          Standard
of Review and Applicable Law     

          A
defendant in a homicide prosecution who raises the issue of self-defense may
introduce evidence of the victim’s violent character. Tex. R. Evid. 404(a)(2); Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App.
2002).  This evidence may consist of opinion
or reputation testimony to prove the victim acted in conformity with his
violent nature.  Tex. R. Evid. 404(a)(2), 405(a); Torres, 71 S.W.3d at 760.  It may also include proof of specific,
violent acts of misconduct to show the reasonableness of the defendant’s fear
of danger, or to show that the
victim was the first aggressor.  Torres, 71 S.W.3d at 760.

          This general rule is not without
limitation, however.  Rule 404(b)
provides for the admissibility of specific bad acts only to the extent that
they are relevant for a purpose other than to show character conformity.  Tex.
R. Evid. 404(b); Torres,
71 S.W.3d at 760.  If a victim’s
unambiguous, violent, and aggressive acts need no explanation, then evidence of
a victim’s extraneous conduct admitted in conjunction with his unambiguous act may
not be relevant apart from its tendency to prove the victim’s character
conformity, which weighs against admissibility. Tex. R. Evid. 404(b);
Reyna v. State, 99 S.W.3d 344, 347 (Tex. App.—Fort Worth 2003, pet. ref’d);
cf. Thompson v. State,
659 S.W.2d 649, 653–54 (Tex. Crim. App. 1983) (holding that when victim’s
conduct was ambiguously aggressive, prior, specific acts of violence are
admissible only so far as they tend to explain the victim’s conduct) superseded by rule, Tex. R. Evid. 404(a)(2), as recognized by, Mozon v. State, 991 S.W.2d 841, 845–46 (Tex. Crim. App. 1999). 

          Accordingly, a trial court is within
its discretion to exclude prior violent acts if the victim’s conduct was
plainly aggressive and no explanation is necessary to show that the defendant
reasonably feared for his life.  See
Torres, 71 S.W.3d at
762.  Compare Thompson, 659 S.W.2d at 653–54 (finding that defendant was entitled to establish
victim’s violent character to explain his ambiguously aggressive conduct of
walking toward defendant with arms outstretched) with Reyna, 99
S.W.3d at 347 (holding that trial court did not err in excluding proffered
testimony about victim’s prior violent acts because defendant’s account of victim’s
conduct during altercation with defendant consisted of unambiguous acts of
aggression and violence that needed no explanation—victim allegedly flashed gun
at defendant and allegedly shot him first) and
London v. State, 325 S.W.3d 197, 206
(Tex. App.—Dallas 2008, pet. ref’d) (concluding that trial court did not err in
excluding victim’s violent past—gang affiliation and terrorization of
neighborhood— because victim allegedly shot at defendant’s car, and his doing so
was unambiguous act of aggression and violence that needed no explanation).   

          Here, Smith testified that Hawkins
pulled a knife and attempted to stab him first— both unambiguous
acts of aggression and violence that need no explanation.  See Reyna, 99 S.W.3d at 347; London,
325 S.W.3d at 206.  Because of the
unambiguous nature of Hawkins’s alleged conduct, we conclude that the trial
court was within its discretion to exclude the evidence as offered solely to
show character conformity.  See Tex.
R. Evid. 404(b); Torres, 71
S.W.3d at 762.  

          Harm Analysis  

          Even if we were to assume the trial court erred in excluding
the proffered testimony, we would conclude that any error was harmless.
Exclusion of evidence does not result in reversible error unless the exclusion
affects a substantial right of the defendant. 
Alexander v. State,
137 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d) (stating
that erroneous admission or exclusion of evidence does not result in reversible
error unless it affects substantial right of accused); see also Tex. R. App. P. 44.2(b).  We must assess, from the context of the
error, whether the judgment requires reversal because the error affected
appellant’s substantial rights.  See
Johnson v. State, 43 S.W.3d
1, 5 (Tex. Crim. App. 2001).  Error
affects a substantial right when it has a substantial and injurious effect or
influence in determining the jury’s verdict. 
See id. at 4.  When we
assess the likelihood that the jury’s decision was adversely affected by the
error, we consider everything in the record, including any testimony or
physical evidence admitted for the jury’s consideration, the nature of the
evidence supporting the verdict, the character of the error, and how it might
be considered in connection with other evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  

          Because it is countered by the direct evidence that the trial
court admitted,
we have fair assurance here that any error made in excluding Hawkins’s earlier
stabbing incident involving Keisha
and Terrell did not have a
substantial and injurious effect or influence in determining the jury’s
verdict.  See Alexander, 137 S.W.3d at 130; see also Vega v. State, 898 S.W.2d 359,
363 (Tex. App.—San Antonio 1995, pet. ref’d) (holding that although evidence of
“bad blood” between defendant’s gang and the complainant’s gang was relevant to
defendant’s state of mind at time of murder, trial court’s erroneous exclusion
of evidence was harmless beyond reasonable doubt because record was replete with testimony concerning ill feelings
between defendant and complainant and two gangs).  Smith offered other
direct evidence that Hawkins was the first aggressor, that he reasonably believed he was in danger
during the altercation with Hawkins, and that the force he used was immediately
necessary to protect his life.  Smith, along with two other witnesses,
testified that Hawkins initiated the fight by grabbing Smith’s steering
wheel.  Also, Smith said that Hawkins
punched him several times in the face. 
He stated that he fought back only because it was necessary to protect the two
women and the child in his car.  Smith
claimed he used his knife only after Hawkins attempted to stab him in his
stomach and was about to stab his neck with the knife.  He testified that he stabbed Hawkins because
he wanted to get away from him and was scared for his life.  Keisha too testified that Hawkins had a
knife.  Finally, Smith stated that
Hawkins was a very violent and aggressive person while he lived with him.  However, the State offered testimony and
physical evidence that undermined Smith’s defensive claims.

          The jury chose to reject Smith’s and
his witnesses’ claims that he acted in self-defense and defense of third party,
as was its province.  See Cain v. State, 958 S.W.2d 404, 408–09
(Tex. Crim. App. 1997) (indicating that jury has sole province to decide what
weight is to be given to contradictory testimony as it turns on evaluation of
credibility and demeanor).  We hold that
the trial court’s exclusion of Hawkins’s prior violent acts did not
substantially injure Smith’s rights, and the error, if any, was harmless. 

Keisha Dupree’s Opinion Testimony

          In
his third issue, Smith contends that the trial court abused its discretion in
sustaining the prosecutor’s objections to Keisha’s opinion that Hawkins was a
violent person.  The relevant testimony
is as follows: 

                   DEFENSE
COUNSEL: In your time period, I guess
December,                          January, February, of living with Mr.
Hawkins, were you able to                       establish
an      opinion about his character for
being a peaceful or                                    violent
person?  Were you able to develop an
opinion? 

                   

                   KEISHA
DUPREE:       Yes, I did.

                    

                   DEFENSE
COUNSEL: What was your opinion?

                   

                   KEISHA
DUPREE:       My opinion was that he could
be violent any                given           time
if approached the wrong way.

                   

                   PROSECUTOR:  Objection, Your Honor, nonresponsive.

                   

                   TRIAL
COURT: Sustained.

                   

                   DEFENSE
COUNSEL: Either the word “peaceful” or
“violent,”                         what was your opinion?

                   

                   PROSECUTOR:  Objection Your Honor, asked and answered.   

                   

                   TRIAL
COURT:  Sustained.

          On
appeal, Smith argues that the trial court incorrectly sustained the State’s
objection to Keisha’s answer to defense counsel’s first question regarding her
opinion of Hawkins because it was a direct response to the question posed.  Also, according to Smith, the second question
regarding her opinion of Hawkins’s character merely sought to simplify the
inquiry and remedy Keisha’s nonresponsive answer.  

          Assuming that the trial court abused
its discretion in sustaining the State’s objections, we find no reversible
error.  Exclusion of evidence does not result in reversible error
unless the exclusion affects a substantial right of the defendant.  Alexander, 137 S.W.3d at 130; see also Tex. R. App. P. 44.2(b).  Generally, no harm results when a jury is not
instructed to disregard a witness’s answer after an objection is
sustained.  See Johnson v. State,
925 S.W.2d 745, 750 (Tex. App.—Fort Worth 1996, pet. ref’d); Rodriguez v.
State, 903 S.W.2d 405, 410 (Tex. App.—Texarkana 1995, pet. ref’d); see
also Wiltz v. State, 827
S.W.2d 372, 374 (Tex. App.—Houston [1st Dist.] 1992), rev’d on other grounds, 863 S.W.2d 463 (Tex. Crim. App.
1993). 

          Here,
the error did not affect a substantial right of Smith.  See Alexander, 137 S.W.3d at 130.  Keisha
answered the question whether Hawkins was a peaceful or violent person.  She stated that he could be violent if a
person approached him in the wrong manner. 
The State objected to the answer as non-responsive, but did not seek a
limiting instruction.  Because the trial
court did not instruct the jury to disregard Keisha’s answer, the answer became
part of the general evidence, and no harm resulted from sustaining the
objection.  See Johnson, 925 S.W.2d at 750; Rodriguez, 903 S.W.2d at 410; see also Wiltz, 827 S.W.2d at 374.  As Smith points out, the second question was
merely a simplified version of the first one. 
Therefore, no harm resulted from the trial court sustaining the State’s
objection to the second question because Keisha’s answer to the first one was
already part of the evidence before the jury. 
We also note that this testimony is cumulative of other evidence that
Hawkins was a violent person.  Smith testified that Hawkins was a very
violent and aggressive person while he lived with him.     

 

Exclusion of
Hawkins’s Tattoos

          In his fourth issue, Smith maintains
that the trial court deprived him of his constitutional right to due process of
law and his right to confront the witnesses against him when it prohibited him
from offering evidence that Hawkins had tattoos depicting acts of violence and
the words “CRIP LIFE” and “GANGSTAFIED.” 
He argues the erroneous exclusion was a constitutional error because the
tattoo evidence formed a “vital portion” of his self-defense and sudden passion
theories.  See Potier
v. State, 68 S.W.3d 657, 665
(Tex. Crim. App. 2002) (holding that rulings excluding evidence might rise to
level of  constitutional violation when
trial court erroneously excludes otherwise relevant, reliable evidence which
forms such vital portion of the case that exclusion effectively precludes
defendant from presenting defense).

          During
the trial, the State asked the trial court to exclude evidence of Hawkins’s
tattoos depicting the words “CRIP LIFE” and “GANGSTAFIED” by redacting the
autopsy report, on the basis that the tattoos were irrelevant and more
prejudicial than probative within the meaning of Texas Rule of Evidence 403.   The trial court excluded evidence of the
words depicted in the tattoos under Rule 403, but allowed the jury to consider
evidence on the existence and number of tattoos Hawkins had.  Further, the trial court noted that it would
revisit its ruling if the content of the tattoos became relevant.  After Smith testified that Hawkins was the
first aggressor, defense counsel again sought to introduce evidence of the
words depicted in the tattoos, and the trial court excluded the words.   

            Standard of Review 

            We review the court’s Rule 403 ruling for an abuse of
discretion. State v. Mechler,
153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Evidence is relevant if it has any
tendency to make the existence of any fact of consequence to the determination
of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401.  There is a presumption of admissibility of
relevant evidence.  See Tex. R. Evid. 402; Erazo v. State, 144 S.W.3d 487, 499 (Tex. Crim.
App. 2004) (Cochran, J., concurring). 
The trial court may exclude relevant evidence under Rule 403 “if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.”  Tex. R.
Evid. 403.  When a trial court
balances the probative value of the evidence against the danger of unfair
prejudice, a presumption exists that favors the evidence’s probative value.  Feldman v. State, 71 S.W.3d 738, 754–55 (Tex. Crim. App. 2002).  The relevant criteria for determining whether
the prejudice of admitting the evidence substantially outweighs the probative
value include the following: (1) the probative value of the evidence; (2) the
potential the evidence has to impress the jury in an irrational but nevertheless
indelible way; (3) the time needed to develop the evidence; and (4) the
proponent’s need for the evidence to prove a fact of consequence.  Mechler, 153 S.W.3d at 440–41.

          Evidentiary rulings rarely rise to the
level of denying the fundamental constitutional right to present a meaningful
defense. Potier, 68
S.W.3d at 663. Rulings excluding evidence might rise to the level of a
constitutional violation if: (1) the evidentiary rule categorically and
arbitrarily prohibits the defendant from offering otherwise relevant, reliable
evidence that is vital to his defense; and (2) a trial court’s clearly
erroneous ruling excluding evidence that forms such a vital portion of the case
effectively precludes the defendant from presenting a defense. Id. at
659–62; Wiley v. State, 74
S.W.3d 399, 405 (Tex. Crim. App. 2002). 
In the first scenario, “the constitutional infirmity is in the arbitrary
rule of evidence itself.” Wiley,
74 S.W.3d at 405.  In the second
scenario, “the rule itself is appropriate, but the trial court erroneously
applies the rule to exclude admissible evidence to such an extent that it
effectively prevents the defendant from presenting his defensive theory.” Id.

          Analysis


          Gang membership is admissible to show
bias, motive, or intent, or to refute a defensive theory.  See Tibbs v. State, 125 S.W.3d 84, 89 (Tex.
App.—Houston [14th Dist.] 2003, pet. ref’d) (citations omitted); see also
Vasquez v. State, 67 S.W.3d
229, 239–40 (Tex. Crim. App. 2002) (holding defendant’s Mexican Mafia
affiliation admissible to show defendant’s motive for killing victim); King
v. State, 29 S.W.3d 556,
565 (Tex. Crim. App. 2000) (holding extensive evidence of appellant’s hatred
for African-Americans, including his “graphic” tattoos and drawings was
evidence that appellant had motive to kill complainant because of complainant’s
race); Williams v. State,
974 S.W.2d 324, 331 (Tex. App.—San Antonio 1998, pet. ref’d) (holding evidence
of defendant’s gang affiliation admissible to establish motive for robbery); Brosky
v. State, 915 S.W.2d 120,
134–35 (Tex. App.—Fort Worth 1996, pet. ref’d) (holding no error in admitting
racist propaganda as evidence that murder was committed by combination animated
by white supremacist beliefs); McKnight v. State, 874 S.W.2d 745, 747 (Tex. App.—Fort Worth 1994, no pet.)
(holding defendant’s and witness’s gang membership admissible to show
defendant’s bias).

          Here, the words “CRIP LIFE” and “GANGSTAFIED” indicate a
possible gang affiliation.  Neither
party, however, adduced evidence that the altercation leading to Hawkins’s death was gang-related.
 Hawkins’s tattoos and possible gang affiliation
did not explain the altercation.  Under
Smith’s version of the events, the altercation arose out of a dispute between
Smith and Hawkins concerning their shared apartment.  
Further, the record does not demonstrate that Smith was aware of the
tattoos or that Hawkins’s possible gang affiliation affected Smith’s state of
mind during the altercation.  Accordingly, the trial court could reasonably
have concluded that the words had little, if any, probative value.  See
Macias v. State, 959 S.W.2d 332, 339 (Tex. App.—Houston [14th Dist.] 1997 pet.
ref’d) (finding evidence of defendant’s gang affiliation not relevant under
Texas Rule of Evidence 401 because membership was not part of reason for murder
or part of explanation for why murder occurred as it did); see also Wachholtz v. State, 296 S.W.3d 855, 858 (Tex.
App.—Amarillo 2009 pet. ref’d) (holding that trial court did not err in
excluding evidence of victim’s brother’s gang tattoos because, although brother
was at crime scene, no evidence existed that defendant saw anyone with visible
gang tattoos or knew about anyone present having gang tattoos).  

           The use of the words depicted in the tattoos
to show Hawkins was a bad person and that he acted in conformity with his bad
character during the altercation with Smith also weighed against admission, as
this use of the tattoos would be improper. 
See id.; see also Galvez v. State, 962 S.W.2d 203, 206 (Tex. App.—Austin
1998, pet. ref’d) (“[G]ang membership is highly inflammatory character evidence
likely to cause an individual to be convicted for being a bad person apart from
sufficient indicia of guilt regarding this particular crime.”); Barlow v. State, 175 S.W.3d 839, 844
(Tex. App.—Texarkana 2005, pet. ref’d) (finding that evidence of four
witnesses’ gang affiliation was unfairly prejudicial). 

          Because the words depicted in the
tattoos have little probative value under the facts of this case and presented
a danger of unfair prejudice, we conclude that the trial court did not abuse its discretion
in excluding the evidence under Rule 403. 
Mechler,
153 S.W.3d at 440–41.  Because the trial court did not
erroneously exclude the evidence, no constitutional error occurred.  See Potier, 68 S.W.3d at 663.  We overrule Smith’s fourth issue on
appeal.  

Conclusion

          We
hold that the evidence is sufficient to support Smith’s conviction, and the evidence is sufficient to support the jury’s negative
finding on the issue of sudden passion.  We
further hold that none of Smith’s challenges to the trial court’s evidentiary
rulings warrants reversal.  Finally, the
trial court did not deprive Smith of due process or his right to confront the
witnesses.  We therefore affirm the
judgment of the trial court. 

 

 

                                                                   

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

Publish.
Tex. R. App. P. 47.2(b).