

**NUMBER 13-10-307-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**WALTER DAVID OLEJNIK,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 92nd District Court
of Hidalgo County, Texas.**

---

## MEMORANDUM OPINION

**Before Justices Garza, Vela, and Perkes
Memorandum Opinion by Justice Vela**

A jury found appellant, Walter David Olejnik, guilty of theft of property of the value of $1,500 or more, but less than $20,000, a state jail felony. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(A) (West Supp. 2010). The trial court assessed punishment at two years in prison and a $2,000 fine, suspended and probated over five years, with the standard conditions of community supervision and conditions that Olejnik pay $8,500 restitution,

perform 120 hours of community service, and attend the theft offender intervention program. On appeal, Olejnik raises four issues, which we combine into three: (1) whether the trial court erred by allowing the State to cross-examine him about communications that may have been protected by the attorney-client privilege; (2) whether the evidence was legally sufficient; and (3) whether the trial court erred in admitting State's exhibit no. 1. We affirm.

## I. FACTUAL BACKGROUND

Christina Knoles is an owner of Mission Bell-Trade Winds RV Resort, an RV resort in Mission, Texas. She lives in Colorado and does not personally manage the park. Consequently, Walter Olejnik was hired as the park's general manager. His responsibilities included the duty to handle the park's money and make deposits for the park at Wells Fargo Bank. He served as the park's general manager for about three and one-half years.

Knoles testified that between February 14, 2009 and March 14, 2009, she and her husband came to Mission to investigate matters at the park. During this visit, Christina Knoles notified Olejnik that she and her husband were going to hire a new office manager because of customer complaints and problems at the park. They did not fire Olejnik but wanted him to train the new office manager.

On April 7, 2009, the Knoleses returned to the park for a "surprise visit." According to Christina, Olejnik became "defensive" and "not very cooperative." The Sunday after they arrived, Olejnik began to move things out of the manager's office. Christina told him to stop because she did not want any receipts or customer information

2

to be misplaced. She testified that when she asked Olejnik for his keys, he gave her a set of keys but failed to return the key to his personal office at the park.

The next day, Christina went back to the manager's office to verify the state of the workplace and see if anything was missing. She testified that at this time, she found a misplaced cash receipt for $2,260.10 from one of the residents, Mr. St. Louis. The receipt was found in a stack of Olejnik's personal mail.

Shirley Kingswell worked in the park's office with Olejnik. She testified that Mr. St. Louis had paid cash in the amount of "over $2,000," on March 27, 2009 for "annual rent" and utilities. However, Christina testified that when she and Kingswell checked the park's computer system, they discovered that someone had deleted Mr. St. Louis's name from the system. Kingswell testified that in order to delete a name from the system, a person must have a specific administrative code. Kingswell stated that Olejnik was the only person in the office who was in possession of that particular code. Christina also testified that she was not in possession of this code.

In addition, Christina testified that when she began to investigate Olejnik, she contacted Wells Fargo Bank and asked for the deposit information for March 27, 2009, the date on the receipt found on Olejnik's desk. Christina estimated that the deposit should have been about $37,000. However, on that particular date, there was only about $35,000 deposited. According to Christina, when she approached Olejnik about the missing money, he did not deny taking it, and he offered to resolve the issue.

Both Kingswell and another employee, Carol Swan, testified that cash in the park's office is often placed in unsecured locations. Swan also stated that other people, who were not front-office employees, would often come behind the counter.

On cross-examination, defense counsel suggested that Swan could have been a potential suspect. Swan testified that the key to the park's office safe was easily accessible because, "everyone knew where it was" and sometimes the door to the safe was left ajar.

Investigator David Garcia was assigned to the case and met with Olejnik. He did not testify that Olejnik made any admissions regarding his responsibility for the missing cash. On cross-examination, defense counsel told Investigator Garcia that Olejnik had not been previously arrested.

Olejnik testified on his own behalf that he had no financial problems and had nothing to do with stealing the money from the park. On cross-examination, when the prosecutor asked Olejnik, "Have you ever been arrested?", he said, "Probably twenty years ago with an altercation with my son, I believe." After hearing his answer, the prosecutor asked him, "Your attorney said you had not been arrested. Why did he say that?" To this, he stated, "It's something that I did forget. It's been twenty something years ago, and I don't remember, you know, what happened."

## II. DISCUSSION

## A. Sufficiency of the Evidence

We first address Olejnik's second and third issues challenging the legal sufficiency of the evidence.[1] "When conducting a legal sufficiency review, a court must ask whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether 'it believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979)). "In doing so, we assess all of the evidence 'in the light most favorable to the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326.

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive it from the owner. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2010). To appropriate property is "to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01(4)(B). "Exercise control" means the intent to deprive the owner of his property without his effective consent. *Id.* § 31.03(b); *Wilson v. State*, 671 S.W.2d 120, 122 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd). Intent to deprive is determined from the words and acts of the accused. *Id.* The elements of a crime may be established through direct or circumstantial evidence or reasonable inferences arising

---

[1] In *Brooks v. State*, the court of criminal appeals held that only one standard should be employed to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt—legal-sufficiency. *See id.* 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010)(plurality op.); *id.* at 926 (Cochran, j., concurring). Accordingly, we will apply a legal-sufficiency standard of review to these two issues. *See Pomier v. State*, 326 S.W.3d 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.)(applying a single standard of review required by *Brooks*).

from that evidence. *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

Here, a rational jury could conclude from the evidence that: (1) Christina Knoles was an owner of the park; (2) Olejnik was the park's manager and had the duty to handle the park's money and make deposits for the park at Wells Fargo Bank; (3) one of the park's tenants, Mr. St. Louis, paid cash in the amount of "over $2,000" on March 27, 2009 for "annual rent" and utilities; (4) in a stack of Olejnik's personal mail, Knoles found a misplaced cash receipt for $2,260.10 from Mr. St. Louis; (5) Mr. St. Louis's name was deleted from the park's computer system by someone; (6) Olejnik was the only person in the park's office who was in possession of the code needed to delete a park tenant's name from the computer system; (7) deposit information from Wells Fargo Bank for March 27, 2009, the date on the receipt found on Olejnik's desk, showed that about $35,000 was deposited; there should have been about $37,000 deposited; (8) when Knoles approached Olejnik about the missing money, he did not deny taking it and offered to resolve the issue; and (9) Knoles did not have the code needed to delete a tenant's name from the park's computer system.

The contrary evidence showed that Olejnik testified he had no financial problems and did not steal any money from the park. Other evidence showed that cash in the park's office was often placed in unsecured locations. Other people, who were not front-office employees, would often come behind the counter. The key to the park's

6

office safe was easily accessible because, "everyone knew where it was" and sometimes the door to the safe was left ajar.

Whether to believe the witness' testimony is ultimately a credibility determination for the jury to decide. *See Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet. ref'd). After considering all of the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient to prove beyond a reasonable doubt that Olejnik was guilty of theft. Issues two and three are overruled.

## B. Attorney-Client Privilege

In issue one, Olejnik argues the trial court erred during the guilt-innocence stage because the State was allowed to cross-examine him about communications that he had with his attorney. Olejnik argues on appeal that the trial court should have sustained his attorney's objection with regard to whether or not Olejnik had informed his counsel that he had been arrested previously.

### 1. Applicable Law

Rule 503(b)(2), entitled "Special Rule of Privilege in Criminal Cases," grants a client a privilege to prevent his lawyer from "disclosing any other fact which came to the knowledge of the lawyer . . . by reason of the attorney-client relationship." TEX. R. EVID. 503(b)(2). The purpose of the attorney-client privilege is to promote communication between attorney and client unrestrained by fear that these confidences may later be revealed. *Austin v. State*, 934 S.W.2d 672, 673 (Tex. Crim. App. 1996). The party asserting the privilege has the burden of establishing it. *Harvey v. State*, 97 S.W.3d 162,

168 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (citing *Strong v. State*, 773 S.W.2d 543, 552 (Tex. Crim. App. 1989)).

We review the trial court's decision on the applicability of a privilege for an abuse of discretion. *See Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *Welch v. State*, 908 S.W.2d 258, 265 (Tex. App.—El Paso 1995, no pet.); *Anderson v. State*, 880 S.W.2d 35, 37 (Tex. App.—Tyler 1994, pet. ref'd). If the trial court's ruling falls within the zone of reasonable disagreement and is correct under any theory of law applicable to the case, we affirm its decision. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

### 2. Preservation of Error

On cross-examination, during the guilt-innocence phase, the prosecutor asked Olejnik, "Did you tell defense counsel that you had never been arrested?" Olejnik replied, "Yes, sir." After Olejnik answered the question, defense counsel objected as follows: "That gets into the attorney-client privilege. He cannot ask about what he told me and he knows that." The trial court overruled the objection and told the prosecutor, "Go ahead. You can ask him that." Then, the prosecutor asked Olejnik, "Did you tell defense counsel that you had never been arrested prior to this incident?" To this, he said, "Yes, sir."

Rule 33.1 of the Texas Rules of Appellate Procedure, governing preservation of error, states, in part:

(a) In General. - As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a *timely* request, objection,

8

or motion that:

> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.

TEX. R. APP. P. 33.1 (emphasis added).

"To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Pena v State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). This allows the trial court and the opposing party an opportuniy to correct the error. *Id.*

An objection is timely if it is made as soon as the ground for the objection becomes apparent. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997). "If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.* It is also necessary for the objecting party to continue to object each time the objectionable question or evidence is offered, obtain a running objection, or request a hearing outside the jury's presence in order to preserve a complaint for appellate review. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999).

With respect to the first question posed to Olejnik, the ground for objection became apparent as soon as the prosecutor asked the question. Thus, the objection was untimely because it was not made until after the prosecutor's question had been asked

9

and answered. Furthermore, no legitimate reason was offered to justify the late objection. Therefore, the complaint is not preserved for appellate review. *See Lagrone*, 942 S.W.2d at 618.

Additionally, no objection was made with respect to the second question posed to Olejnik. And, defense counsel neither obtained a running objection nor requested a hearing outside the jury's presence in order to preserve the complaint for appellate review. Therefore, any complaint about the second question was waived. *See Martinez*, 98 S.W.3d at 193; *Fuentes*, 991 S.W.2d at 273.

Even assuming the error was preserved, we find no harm. Rule 44.2(b) provides that "any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A conviction should not be overturned if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Ex parte Martinez*, 330 S.W.3d 891, 903 (Tex. Crim. App. 2011). Pointing out Olejnik's prior arrests and the fact that he withheld this information from his trial attorney was not the "death knell" in this case, as represented by Olejnik's counsel. Further, the comments were merely passing references in the prosecution's closing argument, and other evidence submitted during trial was more than adequate to find Olejnik guilty. Therefore, even if the objection was timely made, error, if any, was harmless. Issue one is overruled.

10

**C. Admissibility of State's Exhibit No. 1**

In his final issue, Olejnik argues the trial court erred in admitting State's exhibit no. 1. Specifically, he argues the custodian of records had no personal knowledge of the documents prepared.

### 1. Background

Yolanda Salinas, a bank manager for Wells Fargo Bank in Mission, Texas testified she is "the custodian of records" for that bank and that she had an opportunity to review the documents included in State's exhibit no. 1, which is a collection of the park's deposit slips. She stated the deposits in question in this case were deposited at that bank. When the prosecutor offered the exhibit into evidence, defense counsel objected that the State did not lay the proper predicate for business records.

Before ruling on the objection, the trial court allowed defense counsel to question Salinas on voir dire. She testified State's exhibit no. 1 included "approximately" 100 pages and that she reviewed the records included in the exhibit. Based upon the declaration and the affidavit in the back of the exhibit, she had personal knowledge that Jaime Baca, who worked in the bank's legal department, made these records. When asked if she had "any personal knowledge of that affidavit or declaration," she said, "I basically have knowledge—I reviewed these records as far as the contents of it but it was not prepared by me. It was prepared by somebody from the Subpoena Department." She did not see the exhibit being prepared, but she stated, "I have knowledge of the content. Yes, I do as far as I reviewed it. But as far as me completing it, it wasn't me. It was somebody from that department." When defense counsel asked her, "And in

11

response to the line of questioning by [the prosecutor] as to whether or not the records were prepared in a reliable manner and they were transmitted in a reliable manner, you simply have no personal knowledge of that, do you?", she said, "I know that they were prepared by the person who was responsible for preparing them, so yes." The trial court overruled the objection.

### 2. Analysis

A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). "The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

To be admitted as business records, records must be "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record. . . ." TEX. R. EVID. 803(6). All of these elements must be "shown by the testimony of the custodian or other qualified witness, . . . ." *Id.*

Here, the State admitted exhibit no. 1 through the testimony of Yolanda Salinas, the custodian of records for Wells Fargo Bank in Mission. She testified the records were kept in the regular course of business at Wells Fargo. When asked, "[D]id an employee representative of such records make these records or transmit them regarding acts,

12

events, conditions, pains or diagnosis?," she said, "Yes." When asked, "Was it done at or near the time or reasonably soon after the event?," she said, "Yes." She testified "the employee representative who made the entries had actual knowledge of the event." She said that records are exact duplicates of the originals, which are on microfilm. Even though she did not prepare the records, there is no requirement that the testifying witness must have created the records, or even that she have personal familiarity of the mode of preparation of the records. *See Butler v. State*, 872 S.W.2d 227, 238 (Tex. Crim. App. 1994); *Campos v. State*, 317 S.W.3d 768, 777-78 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Montoya v. State*, 832 S.W.2d 138, 141 (Tex. App.—Fort Worth 1992, no pet.).

Thus, the trial court's decision to admit the records contained in exhibit 1 did not fall outside the zone of reasonable disagreement. *See McCarty,* 257 S.W.3d at 239. We hold that the trial court did not abuse its discretion by admitting these records. Issue four is overruled.

### III. CONCLUSION

We affirm the trial court's judgment

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of June, 2011.

13