Juan Manuel TORRES, Appellant,

v.

The STATE of Texas.

No. 1321–00.

Court of Criminal Appeals of Texas.

April 3, 2002.

Jeanine L. Howard, Dallas, for Appellant.

Lori L. Ordiway, Ass't DA, Dallas, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

Under *Tate v. State,* 981 S.W.2d 189, 193 (Tex.Crim.App.1998), a defendant claiming self-defense may introduce a deceased's specific acts to show that the deceased was the first aggressor, but the specific acts must be relevant apart from their tendency to show character conformity. Here, the trial court excluded evidence that, two days before the killing, the deceased, Franklin Valdez (Valdez), entered Diane Espinosa's (Diane) apartment through a window and threatened her and her children. Because this evidence had relevance apart from character conformity, the Court of Appeals erred in affirming the exclusion of this evidence.

## FACTS

Valdez and Roxanne Espinosa dated for several years. Eventually the two moved in to an apartment with Roxanne's aunt, Diane. The relationship between Roxanne and Valdez was not always smooth. Valdez sometimes assaulted Roxanne because he suspected she had been seeing other men. Because of one incident, an assault charge was brought against Valdez.[1]

During the week Valdez was killed, Roxanne moved out of the apartment because Valdez had assaulted her again. She stayed temporarily with friends, including the appellant. The appellant learned that Valdez was looking for him and that Valdez had assaulted Roxanne before. Later in the week, Roxanne called Diane, who told her that Valdez had moved out. Roxanne decided to return to the apartment. That day, Roxanne spoke to Valdez. He told her that he loved her and would leave her alone. As a result of these conversations and the fact Valdez had removed his clothes from the apartment, Roxanne assumed that he would not return.

Roxanne invited the appellant to stay the night at the apartment. Roxanne did not think that Valdez would attack the appellant, but she convinced him to stay with her because if Valdez went looking for the appellant he would probably look at the appellant's home. Roxanne did not tell the appellant that Valdez might come to her apartment, but the appellant brought a gun with him anyway.

The next morning, the appellant awoke and washed up. When he returned to the bedroom, around 6:30 a.m., he and Roxanne heard a noise outside. Roxanne saw Valdez, yelled "it's him," and ran to Diane's bedroom to call 911. Valdez climbed up to the balcony and entered the bedroom through the sliding glass door. As Roxanne was calling the police, she heard a thump and two gun shots. The appellant fled the apartment, but Roxanne stayed in Diane's room until the police arrived. Valdez was found in a sitting position on the commode with one superficial bullet wound to his abdomen and a fatal bullet wound to his face. The appellant was later apprehended in Colorado.

At trial, the appellant claimed that he acted in self-defense. Two witnesses testified that Valdez had gone to the apartment to pick up his belongings, but Roxanne said that she believed Valdez was in a jealous rage. After Roxanne testified, but before the appellant testified, the defense

---

1. Valdez's father testified that an assault charge had been brought against Valdez, but that charge was eventually dropped. The testimony did not include the facts of this assault charge.

offered part of Diane's testimony outside the presence of the jury. Diane testified that a few days before Valdez was killed, he climbed through an apartment window and asked where Roxanne was. When Diane responded that she did not know, Valdez said, "If you don't tell me, I'm going to do something to you and your kids." Although Valdez did not use the word "kill," Diane testified that she was afraid Valdez's words were a threat against her life. The trial court excluded the testimony. The jury convicted the appellant and sentenced him to 25 years imprisonment.

The Court of Appeals affirmed the conviction. *Torres v. State*, No. 05–97–01308 CR, slip op. at 1, 2000 WL 792389 (Tex. App.-Dallas June 21, 2000) (not designated for publication). The appellant averred that the excluded testimony was relevant to his defense to show that Valdez was the first aggressor and to corroborate his version of the facts. *Id.* at 5. The Court of Appeals disagreed and held that, since the appellant was not aware of Valdez's threat to Diane, and because the threat was directed at Diane and not the appellant, the excluded testimony was relevant to the appellant's defense only for "its tendency to prove Valdez was acting in conformity with his violent, threatening character." *Id.* at 7. We granted review to determine whether the Court of Appeals properly concluded that the testimony was only relevant to character conformity.[2] We will reverse and remand.

**2.** The exact ground for review was, "The majority of the Court of Appeals erred in finding that the testimony of Diane Espinosa concerning a previous act of violence and a threat made by the deceased two days before his death was not relevant other than as character evidence and was therefore inadmissible."

**3.** At the time of trial, the Texas Rules of Criminal Evidence were still in force. The Texas Rules of Civil Evidence and the Texas

## DISCUSSION

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App.2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

A defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the deceased's violent character. Tex.R. Evid. 404(a)(2);[3] *Tate v. State*, 981 S.W.2d 189, 192–93 (Tex. Crim.App.1998); *Thompson v. State*, 659 S.W.2d 649, 653 (Tex.Crim.App.1983). The defendant may offer opinion or reputation testimony to prove the deceased acted in conformity with his violent nature. Tex.R. Evid. 404(a)(2) and 405(a); *Tate*, 981 S.W.2d at 192. Specific, violent acts of misconduct may be admitted to show the reasonableness of the defendant's fear of danger, or to show that the deceased was the first aggressor. But specific acts are admissible only to the extent that they are relevant for a purpose other than character conformity. Tex.R. Evid. 404(b); *Mozon v. State*, 991 S.W.2d 841, 845–46 (Tex. Crim.App.1999); *Tate*, 981 S.W.2d at 193.

 In the context of proving the deceased was the first aggressor, we have held that specific, violent acts are relevant apart from showing character conformity by demonstrating the deceased's intent, motive, or state of mind.[4] *Tate*, 981

Rules of Criminal Evidence were consolidated into the Texas Rules of Evidence, effective March 1, 1998. Since no substantive change has been made to the Rules applicable in this case, we will cite to the Texas Rules of Evidence.

**4.** In the context of proving the reasonableness of a defendant's apprehension, this evidence is relevant to show the defendant's state of mind. *Mozon*, 991 S.W.2d at 846. It follows

S.W.2d at 193; *see* 1 STEVEN GOODE, OLIN GUY WELLBORN, III, & M. MICHAEL SHARLOT, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 404.4, at 157 (2d ed. 1993 & Supp.2001) (noting specific, violent acts are admissible to show that the deceased had a motive or intent to be the first aggressor). "Because [generally] the key issue here is the state of mind of the deceased, 'the witness must know but it need not be shown that the appellant had knowledge of the acts of violence of the deceased at the time of the homicide.' "[5] *Lewis v. State*, 463 S.W.2d 186, 188 (Tex.Crim.App.1971).[6]

■ Before a specific, violent act is introduced, however, there must be some evidence of a violent or aggressive act by the deceased that tends to raise the issue of self-defense and that the specific act may explain. *Thompson*, 659 S.W.2d at 653–54 ("Often that evidence ... is ambiguous.... Thus it is the rule that reputation evidence concerning the deceased's character or prior specific acts of violence committed by him are admissible in so far as they tend to *explain* the deceased's conduct."); *Lewis*, 463 S.W.2d at 188;

GOODE, WELLBORN, & SHARLOT, *supra* § 404.4, at 158; *cf.* *Tate*, 981 S.W.2d at 193 (noting that the specific act shed light on the deceased's state of mind and demonstrated the intent or motive behind the confrontation).

The Court of Appeals assumed without deciding that the proper predicate, an aggressive act, had been sufficiently raised by Roxanne's testimony. *Torres*, slip op. at 8. It held that, because Valdez's threat was directed towards Diane and not the appellant, the proffered testimony was only relevant to show Valdez acted in conformity with his character. *Id.* at 7. We disagree with this conclusion.[7]

■ When a defendant claims that the deceased was the first aggressor, prior specific acts of violence relevant to the ultimate confrontation may be offered to show a deceased's state of mind, intent, or motive.[8] *Tate*, 981 S.W.2d at 193; *Lewis*, 463 S.W.2d at 188. We have not required that the specific, violent acts be directed against the defendant to be admissible. In fact, we have found error in excluding such

that the defendant must show that he was aware of the specific acts for the evidence to be admissible. *Id.* at 845. Because the appellant was not aware of the specific act at issue here, our analysis will be limited to the first aggressor context.

**5.** Our decisions are also consistent with commentators of the Federal Rules of Evidence. *E.g.* 1 C. MUELLER & L. KIRKPATRICK, FEDERAL EVIDENCE § 103, at 569–70 (2d Ed.1994).

"Proof of specific acts of violence by the victim toward the defendant is often admissible to show hostility, plan, intent to inflict harm, and similar matters. Here the argument is not so much that the acts show character, hence conduct in conformity with character, but rather that the acts shed direct light on more particular aspects of the victim's outlook or state of mind toward the defendant, and the proof is admissible under FRE 404(b)."

*Id.* In the context of proving that another committed the charged offense, similar evidence is sometimes referred to as "reverse 404(b) evidence." *Id.* at § 115, at 684–87.

**6.** This case predates *Tate* and was decided under the common law and *Dempsey v. State*, 159 Tex.Crim. 602, 266 S.W.2d 875 (1954), not the Texas Rules of Evidence. As we explained in *Tate*, to the extent that these cases hold that specific, violent acts of the deceased are admissible to show character conformity, they are disapproved. *Tate*, 981 S.W.2d at 192–93. *Lewis* and other pre-Rules cases can still provide guidance, subject of course to the Rules of Evidence ~~or~~ and *Tate*.

**7.** We will also assume without deciding that Roxanne's testimony was sufficient to show an aggressive act by Valdez.

**8.** This is not necessarily an exclusive list.

acts where they were directed towards third parties. *See Jenkins v. State*, 625 S.W.2d 324, 325–27 (Tex.Crim.App. [Panel Op.] 1981) (testimony concerning the deceased's conviction for attempted murder of a third party was admissible to show the deceased was the first aggressor); *Lewis*, 463 S.W.2d at 187–88 (evidence that the deceased often carried a knife and got in barroom brawls, along with a threat against the defendant, was admissible). For purposes of proving that the deceased was the first aggressor, the key is that the proffered evidence explains the deceased's conduct. *Cf. Tate*, 981 S.W.2d at 193 (noting that the proffered evidence tended to shed light on the deceased's conduct); *Thompson*, 659 S.W.2d at 654 (noting that the proffered evidence need only explain the deceased's current aggressive conduct, especially were the conduct may be ambiguous). As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant. *See Tate*, 981 S.W.2d at 193; *Thompson*, 659 S.W.2d at 654; *Jenkins*, 625 S.W.2d at 327; *Lewis*, 463 S.W.2d at 188.

■ Here, the proffered testimony revealed that, two days before he was killed, Valdez entered the apartment by climbing through a window. He threatened Diane and her children that "he would do something to [them]" if she did not tell him where Roxanne was. This shows a mind set of violence against those who might stand between him and Roxanne. It could also explain Valdez's unorthodox entry by demonstrating the intent or motive of getting back with Roxanne one way or another, or keeping others away from Roxanne by violence if necessary. Because the proffered testimony was probative of the deceased's state of mind, intent, and motive, we hold that the Court of Appeals erred in concluding that the evidence was relevant only to character conformity. *See Tate*, 981 S.W.2d at 193; *Lewis*, 463 S.W.2d at 188.

## CONCLUSION

The Court of Appeals held that the excluded testimony was relevant only to character conformity. Because of this conclusion, it did not perform a harm analysis. The Court of Appeals, however, also assumed without deciding that: 1) the trial judge was properly put on notice as to the defendant's theory of admissibility; and 2) Roxanne's testimony showed an aggressive act that would allow the introduction of the proffered testimony. Accordingly, we reverse the judgment of the Court of Appeals and remand to that court to determine whether this alleged error was properly preserved for appellate review and whether the proper predicate for Diane's testimony was laid by Roxanne's testimony and, depending on the Court of Appeals's resolution of that issue, to perform the appropriate harm analysis.[9]

KELLER, P.J., concurs.

---

9. The State argues that even if the trial court's ruling was erroneous, that ruling was harmless because the substance of the proffered testimony was presented to the jury. This is a harm analysis argument and is more appropriate for the Court of Appeals on remand. Thus, we will not address it.