COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERTO RODARTE, | § | No. 08-10-00241-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law Number Seven |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20090C11902) |
| | § | |

## O P I N I O N

A jury convicted Roberto Rodarte, Appellant, of driving while intoxicated and the trial court sentenced him to seventy-five days' confinement. Presenting two issues on appeal, Appellant argues that the trial court erred by permitting evidence of blood-alcohol concentration to be admitted at trial and that the evidence was legally insufficient to support his conviction.

## BACKGROUND

At approximately 7 a.m. on February 1, 2009, El Paso police officers responded to a motor-vehicle accident. A westbound vehicle was stopped in the left turn lane at a red light. Appellant, the driver and sole occupant of an eastbound vehicle, veered his automobile to the left, and struck the stationary westbound vehicle head-on with sufficient force to spin it around. Appellant and the occupants of the westbound vehicle suffered injuries and were transported to a hospital. Officer Carolina Aldaba was instructed to follow Appellant to the hospital, where she requested and obtained Appellant's written and verbal consent to submit a blood specimen for blood-alcohol testing. A nurse then drew Appellant's blood and provided the blood sample to Officer Aldaba for testing. Officer Aldaba did not request anyone at the hospital to draw a second sample of Appellant's blood.

Subsequently, Appellant was charged with the offense of driving while intoxicated.

During Appellant's motion-in-limine hearing, the State informed the trial court that it had subpoenaed and obtained Appellant's hospital records from the day of the accident. The records, which were accompanied by a business-records affidavit, contained the results of a second blood-alcohol test that had been conducted by the hospital as part of Appellant's consensual medical treatment. Appellant argued that the State bore the burden of showing that the blood-alcohol test had been medically necessary and because the State had failed to meet this alleged burden, the results of the hospital's blood tests were inadmissible. The State argued that it was not required to subpoena hospital medical personnel to testify why a blood test had been ordered during Appellant's medical treatment at the hospital when the records were accompanied by a properly executed affidavit. The trial court denied Appellant's motion to suppress the hospital-initiated blood-test results.

During his pretrial suppression hearing, Appellant successfully challenged the validity of Appellant's verbal and written consent to submit to the police-initiated blood-alcohol test.[1] However, Appellant again failed to convince the trial court that the hospital's business records containing his blood-alcohol test results, should be suppressed.

At trial, Officer Cesar Melgoza testified that he smelled the odor of an alcoholic beverage emanating from Appellant's vehicle and breath but, due to Appellant's receipt of medical treatment, Officer Melgoza was unable to interact sufficiently with Appellant to determine whether additional signs of intoxication such as bloodshot eyes were present. Officer Melgoza did not observe Appellant slur his speech.

---

[1] Appellant had challenged the voluntariness of the verbal and written consent given while he was in custody.

2

Officer Miller, who had two-months experience as an officer, also responded to the scene of the collision. He testified that he observed a strong odor of an unknown alcoholic beverage on Appellant's breath and body, that Appellant's speech was slurred and his eyes were red, and that Appellant informed him that he had been driving from a bar. Upon cross-examination, Officer Miller admitted that his police report reflected only that he had smelled an alcoholic beverage upon Appellant's breath and body.

Over Appellant's objection, the hospital-initiated blood-alcohol test results were admitted into evidence at trial. Dr. Ramaswami Kalamegham, the technical director for the special chemistry toxicology section of the hospital's laboratory, testified that the hospital's test showed that Appellant had a blood-alcohol concentration of .21 grams of alcohol per 100 milliliters of blood. Upon cross-examination by Appellant, Dr. Kalamegham testified that the emergency-room physician's purpose for ordering certain laboratory tests is not always noted and stated that he knew neither the reason why Appellant's blood-alcohol concentration had been ordered nor whether law enforcement personnel had been present when the order was issued.

## DISCUSSION

### I.

In Issue One, Appellant contends the trial court erred when it admitted Appellant's blood-test results in evidence because the State failed to lay a proper foundation for the admissibility of the blood-alcohol test results at trial.[2] Appellant specifically complains that the State presented no direct

---

[2] Although Appellant stated briefly during the suppression hearing that his objection was one of "foundation," the State contends that Appellant did not pose a "foundation" challenge to the admission of the hospital records but instead asserted that the hospital's second blood draw constituted a warrantless search and seizure in violation of his constitutional and statutory rights. Consequently, the State argues, Appellant bore the initial burden of proving that the government, or a private party acting at the behest of the government, had improperly searched and seized Appellant's blood-alcohol test results without a warrant. *See St. Clair v. State*, 26

evidence to show that the hospital-initiated test was medically necessary and was not produced at the direction of the El Paso Police Department.

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

Appellant cites no legal authority, and we are aware of none, which supports or otherwise espouses Appellant's contention that the State, as part of its predicate or foundation for admitting Appellant's hospital records into evidence, must first demonstrate the medical necessity of drawing Appellant's blood for testing before the results thereof may be admitted into evidence. Similarly, Appellant fails to cite competent, applicable authority to demonstrate under these facts that it was the State's burden to prove that the hospital's second draw of Appellant's blood was not produced at the police department's direction. We are also unpersuaded by Appellant's analysis and arguments regarding the State's alleged burdens.

The business-record exception provides for the admissibility of a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

---

S.W.3d 89, 102 (Tex. App. – Waco 2000, pet. ref'd). We disagree with the State's characterization of Appellant's objection and limit our discussion to the proper admission of the medical records under Rule 803(6). Tex. R. Evid. 803(6).

*See* TEX. R. EVID. 803(6), 902(10)(a).  Rule 902(10)(a) provides that:

> Any record or set of records or photographically reproduced copies of such records, which would be admissible under Rule 803(6) or (7) shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7), that such records attached to such affidavit were in fact so kept as required by Rule 803(6) or (7), provided further, that such record or records along with such affidavit are filed with the clerk of the court for inclusion with the papers in the cause in which the record or records are sought to be used as evidence at least fourteen days prior to the day upon which trial of said cause commences, and provided the other parties to said cause are given prompt notice by the party filing same of the filing of such record or records and affidavit, which notice shall identify the name and employer, if any, of the person making the affidavit and such records shall be made available to the counsel for other parties to the action or litigation for inspection and copying.  *See* TEX. R. EVID. 902(10)(a).

In deciding whether to admit the records, the trial court was required to determine whether the business records had sufficient indicia of reliability or trustworthiness as to guarantee the same protection provided by the constitutional rights of confrontation and cross-examination.  *See Porter v. State*, 578 S.W.2d 742, 746 (Tex. Crim. App. 1979).

Here, Appellant's blood-alcohol test result was part of a group of records produced by the hospital pursuant to a subpoena.  The hospital produced the records accompanied by the affidavit of the hospital's custodian of records in which the custodian recites that the records were kept in the regular course of the hospital's business, and that it was the regular course of business for a hospital employee or representative with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the report or record or transmit information thereof to be included in such report or record.  The custodian's affidavit also states that the records were made at or near the time of the act, event, condition, opinion, or diagnosis or reasonably soon thereafter, and identifies that the attached records to be the originals or exact duplicates of the originals.  *See* TEX. R. EVID. 803(6), 902(10)(b).  The hospital's records and accompanying affidavit comply with the relevant provisions

5

of the business-record exception to the hearsay rule. We conclude that the trial court did not abuse its discretion by finding the hospital's record of Appellant's blood-alcohol test results to be sufficiently reliable to be admissible under the business-records exception to the hearsay rule. *Torres*, 71 S.W.3d at 760. Because we find that the trial court did not abuse its discretion by admitting into evidence the results of Appellant's hospital-initiated blood test, Issue One is overruled. *Id.*

## II.

In Issue Two, Appellant contends that, absent the improperly-admitted blood test results, the evidence is legally insufficient to support his conviction.[3] We disagree.

When reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review all of the evidence, including evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). We "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination.

---

[3] Appellant argues that "without the blood evidence from the medical records[,] there would have been no competent uncontroverted evidence of [his] intoxication," and "[a]bsent this evidence[,] the only evidence in the record of alcohol was an odor of alcohol in the car and possibly . . . on [his] body." Appellant concludes, "Once again, the evidence of intoxication absent the improperly admitted medical records was 'underwhelming.'"

6

*Jackson,* 443 U.S. at 326. Circumstantial evidence alone can be sufficient to establish guilt and is as probative as direct evidence in establishing the guilt of an actor. *Hooper,* 214 S.W.3d at 13. While we consider all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Because we consider all the evidence in a legal-sufficiency challenge, here we include Appellant's blood-test results in our analysis of the legal sufficiency of the evidence *Conner*, 67 S.W.3d at 197; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

A person commits the offense of driving while intoxicated if he is intoxicated while operating a vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West 2011). The information and complaint alleged under Paragraph A that Appellant, "while operating a motor vehicle in a public place, was intoxicated, to wit: by not having the normal use of mental and physical faculties by reason of the introduction of alcohol into the body." Paragraph B alleged that Appellant, "while operating a motor vehicle in a public place, was intoxicated, to wit: by having an alcohol concentration of .08 or more[.]" *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011).

The evidence at trial reveals that Appellant left a bar and drove his vehicle into a turn lane designated for oncoming traffic where he struck another vehicle head-on, injuring himself and the other vehicle's two occupants, thus requiring them to be transported to a hospital. Officer testimony established that the odor of an alcoholic beverage emanated from Appellant's vehicle, breath, and body. Evidence that Officer Miller had observed Appellant to have slurred speech and bloodshot eyes was impeached upon cross-examination with his report which did not reveal these observations. According to Dr. Kalamegham, the results of Appellant's hospital-initiated blood test showed that

7

Appellant's blood-alcohol concentration was .21, an amount in excess of .08 as set forth in the statutory definition of the term "intoxicated." TEX. PENAL CODE ANN. § 49.01(2) (West 2011).

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it may choose to believe some testimony and disbelieve other testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Viewing this evidence in the light most favorable to the verdict, we find that any rational fact finder could have found beyond a reasonable doubt that Appellant was guilty of driving while intoxicated. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clayton*, 235 S.W.3d at 778. Because the evidence is legally sufficient to support his conviction, Appellant's second issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

November 16, 2011

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)

8