**Opinion filed March 22, 2012**



In The

# Eleventh Court of Appeals

_____

### No. 11-09-00295-CR

_____

## RODNEY LAUDELL MASON, JR., Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Glasscock County, Texas**
**Trial Court Cause No. 421**

## MEMORANDUM OPINION

The jury convicted Rodney Laudell Mason, Jr. of the offense of murder and assessed his punishment at confinement for life. We affirm.

### Issues

Appellant presents three issues for review. In the first issue, he contends that the evidence is insufficient as a matter of law to rebut his claim of self-defense. Appellant argues in his second and third issues that the trial court erred in excluding testimony regarding specific violent acts of misconduct committed by the victim and regarding the victim's noncompliance with prescribed medications.

### Background

The record shows that emergency personnel were dispatched around 9:30 p.m. on March 15, 2008, after receiving a report that a body was lying on Highway 137. When

authorities arrived, the victim, Timothy Wayne Sanchez, was dead. He had suffered multiple cut and stab wounds and died as a result of "thrust"-type stab wounds to the left neck, the left flank (severing the bottom of the kidney), and the right neck. The autopsy revealed forty-two wounds of varying degrees of severity to the victim's head, face, neck, arms, hands, and torso, including defensive wounds to his hands. There were drag marks from the highway to a fence indicating to Sheriff Keith Burnett that the victim had been dragged from the highway to the fence (approximately seventy feet away) but had somehow made his way back to the highway. The victim's shirt was soaked with blood, and he had dirt on the majority of his body. There was blood on the highway, on the shoulder of the highway (including separate pools of blood), in the grass, and on a pole.

Appellant was eventually apprehended in New Mexico and arrested for the offense. Appellant admitted killing the victim, but appellant claimed that he acted in self-defense. Appellant's statement was recorded on a DVD that was played for the jury and admitted into evidence as State's Exhibit No. 25. In his statement, appellant said that he met the victim at a convenience store in Odessa. According to appellant, the victim said that he was a member of the Mexican Mafia; that he had a gun, "a .38"; and that he could get appellant two ounces of cocaine for only $1,000 from "his people" in San Angelo. Appellant indicated that that was a really good price, and he agreed to the purchase. Appellant and the victim were on the way to San Angelo in appellant's car when the victim offered appellant a line of cocaine. Appellant said that he had slowed down and had begun snorting the cocaine when the victim suddenly attacked appellant with a metal pipe or bar; the victim hit appellant on the forehead and the top of the head with the metal bar. Appellant used his hands to demonstrate the approximate length and diameter of the metal bar. In order to defend himself, appellant first tried to push the victim away and then grabbed his pocket knife and began stabbing the victim. Appellant pulled over, and the struggle continued outside the car. Appellant first said that he followed the victim out of the car, but he later said that the victim dragged appellant out of the car. After the struggle, appellant dragged the victim's body over to the fence. Fearing that the victim's "buddies" would be there soon, appellant left the scene and drove back to Odessa. During his interview, appellant displayed a scar on his pinkie finger from a cut received during the struggle with the victim.

DNA testing of samples taken from appellant's car revealed that the victim's DNA was present in bloodstains located inside the car on the passenger's side. Though bloodstains were not apparent to the naked eye because they had been cleaned, numerous bloodstains became

2

apparent at various places inside the car when sprayed with a chemical that reacts with iron in blood. Most of the blood at the scene came from the victim; however, several drops of appellant's blood were located on the highway. Appellant's blood was also found on the victim's jeans.

Julius Kal Smith, a friend of appellant that had been in a relationship with appellant's sister since 1990, testified that he saw appellant later that night in Odessa and that appellant had a bump on his head that was still bleeding a little. Smith saw appellant's car the next day; he could tell there had been a struggle in the car. Smith cleaned the blood out of appellant's car, cut out a bloodstained seatbelt, threw the seatbelt away, and also threw away a metal bar that he found in the car. Smith described the metal bar as being twelve to sixteen inches long and wrapped in black tape.

Two peace officers testified that they also saw appellant on the night of, but after, the victim's death. Appellant was with Smith in Odessa when Smith's car ran out of gas. Trooper Kerry Alan Vore observed the stalled vehicle and stopped to see if the motorist needed assistance. When the occupants of the vehicle jumped out, Trooper Vore asked Officer Scott McKown to come assist him. Smith was arrested after he gave false identifying information. The officers did not observe any wounds on appellant's head at that time, nor did they think appellant was acting strangely.

To support his claim of self-defense, appellant presented evidence about the victim. Appellant presented the testimony of Aldo Carrasco Alvarado, who knew the victim "[f]or about three days." Alvarado testified that he had seen the victim carrying a black metal bar or pipe approximately fourteen to sixteen inches long. Alvarado also testified that the victim had threatened to kill him. Alvarado described the victim as being bossy, aggressive, and angry.

Appellant presented the testimony of Dr. Jarvis Wright, a psychologist who had reviewed the victim's mental health records spanning from when he was in first grade to about one year prior to his death. The victim had been diagnosed with bipolar disorder, post-traumatic stress disorder, and conduct disorder. Dr. Wright explained these disorders and some of the characteristics associated with them, including acting violently.

The State presented rebuttal witnesses indicating that the victim was not a violent person. The State also presented evidence showing that the victim was leaving his girlfriend and moving back to San Angelo where his family lived. A coworker testified that, on the day of his death, the victim had asked the coworker for a ride to San Angelo and offered to pay for the gas. Other

3

evidence showed that the victim had been paid on Friday (the day before his death), that he had about $700 on him on the day he was killed, and that he always carried a wallet containing his cash and Texas identification card. Authorities testified that they looked for the victim's wallet at the scene but that they did not find any wallet.

Furthermore, the victim in this case was eighteen years old and was described as being "a very small kid," approximately 120 pounds and 5'4" or 5'5" tall. Appellant was twenty-nine years old and was described as being approximately 5'10" or 5'11" tall and weighing 190 to 200 pounds. The toxicology tests performed in conjunction with the autopsy indicated that the victim had no drugs or alcohol in his system.

*Self-Defense*

A person is justified in using force against another when the actor reasonably believes that the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31 (West 2011). Deadly force may be justified as follows:

(a) A person is justified in using deadly force against another:

(1) if the actor would be justified in using force against the other under Section 9.31; and

(2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:

(A) to protect the actor against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

(b) The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against whom the deadly force was used:

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

(B) unlawfully and with force removed, or was attempting to remove unlawfully and with

4

force, the actor from the actor's habitation, vehicle, or place of business or employment; or

(C) was committing or attempting to commit an offense described by Subsection (a)(2)(B);

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

*Id.* § 9.32.

The defendant has the initial burden to produce some evidence to support a self-defense claim. The State then has the burden of persuasion to disprove the defense beyond a reasonable doubt. *Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011); *Zuliani v. State*, 97 S.W.3d 589, 594–95 (Tex. Crim. App. 2003). The burden of persuasion is not one that requires the production of evidence but requires only that the State prove its case beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

Under the facts of this case, we cannot overturn the jury's rejection of appellant's self-defense claim. The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The jury apparently rejected appellant's claim of self-defense, which it was free to do in this case. The jury could have reasonably concluded that appellant's conduct in stabbing the victim forty-two times (the victim's wounds included defensive wounds and stab wounds on the back of his body), in continuing the assault outside the vehicle, in dragging the victim's body away from the highway, and in fleeing was inconsistent with his defensive claim. *See Smith v. State*, 355 S.W.3d 138, 144–47 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Appellant's first issue is overruled.

### Excluded Evidence

In his second and third issues, appellant complains of the trial court's exclusion of evidence regarding prior violent acts committed by the victim and the victim's prescription medications. A trial court's ruling admitting or excluding evidence is reviewed on appeal for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). The ruling

will be upheld on appeal if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.*

With respect to his second issue, appellant offered the testimony of Dr. Wright regarding acts of violence that had been committed by the victim. However, Dr. Wright's knowledge of any acts committed by the victim came entirely from his review of the victim's medical records, which were not offered into evidence at trial and are not part of the record on appeal. Dr. Wright had never met the victim and had no personal knowledge of any acts committed by the victim. The victim's medical records apparently indicated that the victim had attacked his doctors and other people. The trial court ruled that appellant could introduce evidence of the victim's prior acts to show that the victim was the aggressor but that the mental health records could not be used for that purpose and that Dr. Wright could not testify "about the records indicating multiple acts of violence."

While we agree with appellant's statements that (1) pursuant to TEX. R. EVID. 703, Dr. Wright could rely on the victim's records as a basis for his expert opinion and (2) specific acts of violent conduct committed by a victim may be admissible under TEX. R. EVID. 404 and 405 to show that the victim was the aggressor and that the defendant acted in self-defense, we do not agree that the trial court abused its discretion in excluding Dr. Wright's proffered testimony about the victim's prior acts of violence in this case. First, Dr. Wright was not an appropriate witness to testify about the prior acts of violence. Dr. Wright's proffered testimony was hearsay for which no exception was offered by appellant.[1] *See* TEX. R. EVID. 801–804. Second, specific acts of a victim's violent conduct "are admissible only to the extent that they are relevant for a purpose other than character conformity." *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). Specific violent acts have been held to be relevant apart from showing character conformity in the context of proving that the deceased was the first aggressor by demonstrating the deceased's intent, motive, or state of mind. *Id.* In this case, the record does not show that Dr. Wright's proffered testimony that the victim had "attacked" his doctors and others would have been relevant for a purpose other than character conformity. *See id.* at 760–62; *Smith*, 355 S.W.3d at 150–51; *James v. State*, 335 S.W.3d 719, 728 (Tex. App.—Fort Worth 2011, no pet.). Appellant's second issue is overruled.

---

[1]We note that appellant has not asserted that the specific acts of misconduct gleaned from the victim's medical records were admissible for the limited purpose of explaining or supporting Dr. Wright's expert opinion. *See* TEX. R. EVID. 705; *see also Valle v. State*, 109 S.W.3d 500, 505–06 (Tex. Crim. App. 2003) (trial court has discretion in conducting balancing test under Rule 705(d)). Appellant's contention is that they were admissible to show that the victim was the aggressor.

In his final issue, appellant complains that the trial court prohibited Dr. Wright from testifying what the effects would have been on the victim if the victim had failed to take his prescription medications. Defense counsel informed the trial court that Dr. Wright would testify that a patient who had the disorders that the victim had; who had been prescribed the three specific, mood-stabilizing medications that the victim had been prescribed; but who did not take the medications "would tend to become unstable and violent." The trial court ruled that Dr. Wright could not testify "about anything involving medication."

The record shows that Dr. Wright, a psychologist, was not authorized to prescribe medication. The prescribing doctor was not called as a witness, and it was not even clear from the proffer of evidence when the medications had been prescribed or whether the victim should still have been taking them around the time of his death. The most recent mental health record reviewed by Dr. Wright, which may or may not have contained information regarding the victim's prescriptions, was dated February 2007—more than a year prior to the date of this offense. Under these circumstances, we cannot hold that the trial court abused its discretion in excluding Dr. Wright's testimony regarding the victim's medications. Appellant's third issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


March 22, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

7