**Opinion filed May 9, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00168-CR
_____

## AQUARIUS MONTREL CARRION, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 9648-D**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Aquarius Montrel Carrion, of the offense of burglary of a habitation, made an affirmative deadly weapon finding, and assessed punishment at confinement for thirty years and a $10,000 fine. We affirm.

Appellant presents three issues on appeal. He challenges the sufficiency of the evidence in his first issue. In the second issue, Appellant complains of the trial

court's exclusion of evidence. In his final issue, Appellant asserts that the trial court was biased and prejudiced.

Appellant was charged with committing the offense by knowingly and intentionally entering the habitation of Andrea Evans without her consent and by committing or attempting to commit aggravated assault while inside the habitation. Appellant's specific argument in his first issue is that no rational jury could have found that he committed this offense because the eyewitness testimony was "shaky" and "unreliable" and because Appellant had an alibi. We review Appellant's challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Andrea Rashon Evans testified at trial that she knew Appellant because of his relationship with her niece, Lacie Williams. Appellant was the father of Williams's two children, and Evans saw Appellant about once a month. Evans testified that, early in the morning on May 9, 2010, she was awakened by a voice calling her "Mom," telling her to "come here," and saying he wanted to "show [her] something." Evans's two sons—ages ten and eighteen—lived with her, and

2

she at first thought that it was her older son, Brandon Alexander Moore, who was calling her. She said that the "voice sounded kind of scratchy" and thought that something was wrong with Moore. When Evans walked into the family room where Moore was sleeping, she felt somebody grab her by the shoulder and twirl her around. She was facing the intruder at a "real close distance" and recognized him; it was Appellant. Evans testified that she had not given Appellant consent to enter her house. She asked, "Aquarius, what are you doing here?" According to Evans, Appellant said, "Don't call me Aquarius." She called him "Aquarius" again, and Appellant put a gun to her head. Evans thought Appellant was going to shoot her. Appellant touched Evans's "private area" with his free hand, and Evans "took off running." She got her cell phone, hid in a closet, and called 911. Evans had not been in the closet long when her son came and told her, "[H]e's gone, he went through the back door." The police arrived shortly thereafter. Evans had no doubt that Appellant was the person who committed this offense.

Moore testified similarly to Evans. Moore knew Appellant because Appellant had been Moore's cousin's boyfriend. Moore testified that he was awakened by voices early in the morning on May 9, 2010. Moore heard a voice saying, "Mom, come here." Moore recognized the voice as being Appellant's. Moore did not get up; he stayed on the couch and listened. He heard his mother asking, "What's wrong, what's wrong?" After Evans called Appellant by name, Moore heard Appellant tell her not to call him "Aquarius." Moore, who was peeking over the couch, saw Appellant point a gun at Evans's head. Evans pleaded with Appellant not to shoot her. Moore then heard Evans run back to the living room to get her phone to call the police. Moore testified that Appellant left through the back door and that Moore was able to see Appellant's face at that time. Moore ran to check on his mother, who was talking on the phone and was "crying

3

hysterically." Both Moore and Evans testified that they had not had any problems with Appellant and that, prior to this offense, they had nothing against Appellant.

Officer Michael Garcia testified that he was dispatched at 5:45 a.m. to the scene of a burglary of a habitation in progress. When he arrived, Evans was still on the phone with dispatch, and she seemed "very traumatized about what had just happened." Evans and Moore told the officer what happened and also told him the name of the person that had come into their house. While Officer Garcia was still at the scene, he received word that Appellant was calling and wanted to talk to the police because he had been informed that "somebody had accused him of breaking into somebody's house." Officer Garcia left Evans's house and drove to Appellant's grandmother's house, about three-tenths of a mile away, to talk to Appellant. Appellant had a receipt from Whataburger showing that he had placed an order at 4:26 a.m. that morning. Appellant showed the receipt to the officer.

Appellant testified at trial and denied committing the offense; he said that he was not at Evans's house that morning. Appellant testified that he "texted" his grandmother, went to Whataburger to get something to eat, and then went to his grandmother's house, arriving there around 4:40 a.m. While still at his grandmother's, he received calls from Williams and a call from his mother. Williams informed Appellant that somebody had just broken into her aunt's house, that her aunt said it was Appellant, and that the police were looking for him. Appellant, shocked at the accusation, called 911 and asked to have an officer dispatched to his location. He testified that he showed the Whataburger receipt to the officer, explained that he had been at his grandmother's house, and asked the officer if he wanted to talk to the grandmother or search the residence for a weapon. According to Appellant, the officer just talked to Appellant and wrote down what was said.

4

Appellant's grandmother, Norrice Carrion, testified that, on the morning of the offense, Appellant had not been anywhere to break into anybody's house. Appellant "called" her around 4:30 a.m. and asked her if she wanted anything to eat from Whataburger. Appellant's grandmother testified that she always gets up at 4:30 a.m. because she has to be at work at 6:00 a.m. Appellant's grandmother testified that Appellant arrived at her house not long after 4:30 a.m. and was still there at 5:30 a.m. when she left for work. Although she was absolutely positive that she left for work at 5:30 a.m., Appellant's grandmother also said she was at home when an officer knocked on her door, which she said was sometime before 5:30 a.m. Officer Garcia testified on rebuttal, however, that he did not go to the grandmother's house until after 6:39 a.m. when he was dispatched to go there at Appellant's request. The officer also testified that Evans's call to 911 occurred at 5:43 a.m.

As the factfinder, the jury was free to judge the credibility of the witnesses. The jury apparently chose to believe the testimony of Evans and Moore, not to believe the testimony of Appellant, and to reject Appellant's contention that the Whataburger receipt proved his alibi. The receipt showed only that Appellant placed an order at 4:26 a.m., more than one hour before the burglary at Evans's home. Based upon the evidence presented at trial, a rational jury could have found beyond a reasonable doubt that Appellant committed each of the elements of the offense of burglary of a habitation as charged in this case. We hold that the evidence is sufficient to support the conviction. Appellant's first issue is overruled.

In his second issue, Appellant complains of the trial court's exclusion of evidence. Appellant asserts that the trial court erred in sustaining the State's objections during the direct examination of Williams, a witness for the defense. We review a trial court's decision to admit or exclude evidence under an abuse of

discretion standard, and we will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

The record shows that the trial court sustained a hearsay objection made by the State during Williams's narrative answer about what was said in a phone conversation that occurred on the morning of the offense when Moore telephoned Williams to tell her about the offense. When she got off the phone with Moore, Williams telephoned Appellant. The trial court also sustained two objections made by the State when Williams started to testify about what Appellant had said during that phone conversation. Appellant argues that Williams should have been permitted to testify about what was said during her phone conversations with Moore and Appellant because "a prior out of court statement made by a defense witness or a defendant is not hearsay" under TEX. R. EVID. 801. Appellant also asserts that his out-of-court statement to Williams "was offered as a prior consistent statement to rebut the express or implied charge against the accused of recent fabrication." *See* TEX. R. EVID. 801(e)(1)(B).

We hold that the trial court did not abuse its discretion in prohibiting Williams from testifying about what was said during her phone conversations with Moore and Appellant. What was said during Williams's phone conversations constituted hearsay, and Appellant offered no explanation at trial that the statements qualified as an exception to the hearsay rule. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Nothing in the record supports Appellant's contention on appeal that the statements qualified as nonhearsay under Rule 801(e)(1)(B). Appellant did not assert this contention at trial, nor did he make an offer of proof as to what Williams's testimony would have been. Furthermore, because Appellant's statements to

6

Williams were not offered by the State against Appellant, they did not constitute admissions by a party-opponent under Rule 801(e)(2). The trial court did not abuse its discretion in excluding the hearsay testimony.

Appellant next contends that the trial court should not have excluded Williams's testimony indicating that Evans drank to excess every night, regardless of whether she was supposed to work the next day. The record shows that the State objected that such an attack on Evans's credibility was improper under TEX. R. EVID. 608(b). The trial court sustained the objection. Appellant offered this evidence to impeach Evans. Appellant had asked Evans during cross-examination how much she had had to drink the night before this offense. Evans responded, "Nothing. I don't -- I don't drink when I have to go to work. I never do."

Rule 608(b) prohibits the use of specific instances of conduct, other than criminal convictions, to impeach a witness. Specific instances of conduct may, however, be admissible to expose bias, to correct an affirmative misrepresentation made during direct examination, or to demonstrate lack of capacity. *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997). Evidence of specific conduct such as drug or alcohol use is not admissible under Rule 608(b) to impeach a witness's testimony unless that evidence indicates that the witness was impaired by drug or alcohol use at the time the witness observed the crime. *Id.* Williams testified that she did not see or talk to Evans that night. Williams had no knowledge that Evans was impaired in any way at the time of the crime. Furthermore, the alleged misrepresentation made by Evans was made during Appellant's cross-examination of Evans, not during her direct examination. The trial court did not abuse its discretion in excluding the proffered testimony by Williams regarding Evans's alcohol use.

We hold that the trial court did not abuse its discretion when it sustained the State's hearsay objections or when it sustained the State's Rule 608(b) objection. Appellant's second issue is overruled.

In his final issue, Appellant argues that various actions of the trial court indicated that the trial court was biased and prejudiced. In this issue, Appellant points to various evidentiary rulings, including those addressed in his second issue, and to the denial of a challenge for cause to prospective juror George Thompson as instances revealing the trial court's bias.

We have reviewed the record, and we discern no bias, prejudice, or impartiality by the trial court in favor of the State or against Appellant. The trial court's evidentiary rulings addressed in Appellant's second issue were proper. The trial court did not prohibit the proper impeachment of Evans. Additionally, Appellant's challenge for cause was properly denied as the record affirmatively shows that Thompson was rehabilitated. Thompson affirmatively stated that he could presume that Appellant was innocent until proven guilty and that he could follow the law instructing him not to consider the failure to testify as a circumstance against Appellant or as evidence of guilt. Appellant was not denied the right to due process or the right to a fair trial by a neutral and detached judge. Appellant's third issue is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT

May 9, 2013                                             CHIEF JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

8