**Affirmed; Opinion Filed December 19, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01212-CR

**SERGIO URESTI, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F-1112542-K**

## OPINION

Before Justices FitzGerald, Lang, and Brown
Opinion by Justice FitzGerald

A jury found appellant guilty of continuous sexual abuse of a child under the age of fourteen and assessed his punishment at thirty-five years' imprisonment. In two issues on appeal, appellant asserts the trial court erred in admitting his wife's testimony concerning their sexual relationship and in admitting a chart setting forth the instances of sexual abuse described in the complaining witness's testimony. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

## BACKGROUND

Appellant began sexually abusing his daughter in their home when she was eight or nine years old and in the third grade. On the first occasion, appellant forced his daughter (the complainant) to watch a pornographic movie and performed oral sex on her. The sexual abuse continued until the complainant was in seventh grade. Throughout that period, appellant

performed oral sex on the complainant and forced her to perform oral sex on him. When the complainant was ten or eleven years old, appellant inserted his penis into her vagina. Appellant would come to the complainant's room at night and rub her vagina. On other occasions, appellant forced the complainant to fondle his penis.

At some point, the complainant told two of her school friends about the abuse. When she was thirteen, she told her mother, Aracely Hernandez. Although Hernandez wanted to go to the police, the complainant persuaded her not to do so because she was afraid her mother would be deported or that the family would be unable to support itself.

About two weeks after the complainant told her mother about the sexual abuse, on a Friday afternoon, appellant caught the complainant holding hands with a boy outside her school. When they arrived home, appellant slapped the complainant, pulled her hair, and called her a "stupid bitch." The following Monday, the complainant reported the sexual abuse to her school counselor. The police were notified and appellant was eventually arrested and charged.

The complainant testified at length about the sexual abuse at trial. The State also presented testimony of the complainant's childhood best friend, the school counselor, a forensic interviewer from the Children's Advocacy Center, the complainant's mother, a physician from the hospital where a sexual assault exam had been performed, the detective assigned to the case, and a counselor who provided the complainant with therapy following her outcry. Appellant presented no witnesses. The defensive theory was that the complainant fabricated the allegations because she was angry with appellant for punishing her for interacting with a boy.

The jury found appellant guilty of continuous sexual abuse of a child under fourteen and assessed punishment at thirty-five years' imprisonment. Appellant timely perfected this appeal.

## ANALYSIS

### *Admission of the Chart*

In his second issue, appellant complains the trial court erred in admitting a chart made by the prosecutor setting forth the instances of sexual abuse testified to by the complainant. Specifically, appellant asserts that a chart summarizing evidence that is already before the jury is not admissible under rule 1006 of the rules of evidence, constitutes improper bolstering of the complainant's testimony, and circumvents the requirements of article 36.28 of the code of criminal procedure. The complained-of exhibit is not part of the record on appeal and there is no discussion of its contents on the record. But appellant posits that if we assume the exhibit was correctly described at the time it was offered into evidence, "the chart was likely erroneously admitted."

Even if we were able to determine error based on the assumptions appellant advances, the issue has not been preserved for our review. When the exhibit was offered into evidence at trial, appellant's sole objection was that the chart was "hearsay." It is well-established that a complaint on appeal must comport with the objection made at trial; otherwise any error is waived.[1] Appellant's argument on appeal does not comport with the objection asserted at trial. Therefore, appellant's complaint about the admission of the chart has been waived. Appellant's second issue is overruled.

### *Admission of Testimony Concerning Appellant's Sexual Relationship With His Wife.*

In his first issue, appellant argues the trial court erred in admitting his wife's testimony concerning their sexual relationship. According to appellant, his sexual proclivities were not relevant, the probative value of the evidence was outweighed by the danger of unfair prejudice, and the evidence constituted improper extraneous offense and character evidence. Because

---

[1] *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

appellant did not raise a rule 404(a) or 404(b) objection at trial, we consider only appellant's complaint as to relevance.[2]

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.[3] We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement.[4] Likewise, we give deference to a trial court's determination that the probative value of the evidence is not outweighed by the danger of unfair prejudice.[5]

"All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by [the Texas Rules of Evidence], or by other rules prescribed pursuant to statutory authority."[6] "Evidence which is not relevant is inadmissible."[7] "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[8]

At one point during the direct examination of Hernandez, the State said, "I want to ask you about your sex life with [appellant]." Defense counsel objected, stating, "Judge, I'm going to object to the relevance of that to this." Both counsel then engaged in an off-the-record conversation with the judge at the bench. The judge called for a ten minute break. After the break, before the jury returned, the judge stated, "All right. Basically, the whole thing would be

---

[2] There is also no indication appellant objected that the probative value was outweighed by the danger of unfair prejudice, or that the State relied on rule 403 to support admission of the testimony. *See* TEX. R. EVID. 403. Nonetheless, the trial court admitted the testimony on this basis.

[3] *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).

[4] *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

[5] *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

[6] TEX. R. EVID. 402.

[7] *Id.*

[8] TEX. R. EVID. 401.

weighing the probative value versus the prejudicial affect. The probative does outweigh the prejudicial, so I am going to allow it."[9]

When the questioning resumed, the State asked Hernandez why she and appellant didn't have sex frequently. Hernandez stated that sometimes appellant told her she was fat and ugly and that she had lost something. The following exchange ensued:

> A. No. He - - I don't know. He would tell me before I was - - I used to smell like a little girl.
>
> Q. He would tell you, you didn't smell like a little girl anymore, that you lost that?
>
> A. Uh-huh.
>
> Q. And that would be a reason he wouldn't want to have sex with you?
>
> A. It was either because he had prostate issues or it was normal not to be so intimate anymore.
>
> Q. So when you had sex would he ever say anything weird to you?
>
> A. Well, yea, sometimes he would tell me that he wanted me to be with another woman, and they were just fantasies. And he would also ask me if I had started having sex when I was younger, like, maybe 12 or 13-years-old.
>
> Q. He would ask you if you started having sex then?
>
> A. He would ask me when we had sex sometimes.
>
> Q. I'm unclear about what you're saying. Are you saying during sex he was asking you to tell him that?
>
> A. When we had sex he would ask me if I had had sex when I was 10-years-old, 11, 12, and to answer him yes. And if it was with an adult?
>
> Q. So this is while y'all are actually having sex, he's wanting you to say if you had sex at age 9 or 10 with an older man?
>
> A. He would ask me when we had sex.

---

[9] Rule 403 provides that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

Q. So he wanted you to say - -

A. He would ask me how old I was when I had sex for the first time?

Q. So he would want you to say yes to the questions about you having sex when you were 9 or 10?

A. He would ask me at what age, whether it was 12, 11, or when.

Assuming without deciding that the trial court abused its discretion in admitting the above testimony, we cannot conclude appellant was harmed by its admission. A violation of evidentiary rules resulting in the erroneous admission of evidence is nonconstitutional error, subject to a harm analysis under rule 44.2(b).[10] Any nonconstitutional error that does not affect substantial rights must be disregarded.[11] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[12] A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance the error did not influence the fact-finder, or had but a slight effect on its verdict.[13]

In determining the harm, we consider the existence and strength of other evidence, the emphasis given to the erroneously admitted evidence, and any limiting instructions.[14] Here, there were no limiting instructions specific to the complained-of testimony.[15] And after the testimony was elicited, the State referenced the testimony again in closing argument, characterizing appellant's proclivities with his wife as "sick" and "disgusting." Nonetheless, the evidence against appellant was overwhelming.

---

[10] *See* TEX. R. APP. P. 44.2(b); *Coble v. State,* 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

[11] TEX. R. APP. P. 44.2(b).

[12] *Coble*, 330 S.W.3d at 280.

[13] *Id.*

[14] *See Chaddock v. State*, 203 S.W.3d 916, 928–29 (Tex. App.—Dallas 2006, no pet.) (discussing harm in the context of erroneously overruled rule 403 objection).

[15] The jury charge did contain a general instruction concerning extraneous offense evidence.

The complainant testified extensively about appellant's sexual abuse of her, and this testimony was corroborated by other witnesses. Caitlin Cleveanger, former forensic interviewer with the Children's Advocacy Center testified about her interview of the complainant. The complainant was thirteen years old at the time of the interview, and described the first instance of sexual abuse by her father when she was in the third grade. The complainant told Cleveanger that her father had shown her a "dirty" movie and asked her if she wanted to do the things depicted in the movie. The child said "no," and went downstairs to watch television. But her father came downstairs and removed her pants and performed oral sex on her. The complainant explained that she just "froze" and it scared her. The complainant also described another instance that occurred when she was in the fourth grade. She reported that her father called her upstairs to the master bedroom. When she arrived, he asked her to take off her clothes and get on the floor. Her father then removed his clothes and put his penis inside her vagina. The complainant was screaming and crying and telling him to stop. At one point, appellant stopped, and the complainant pushed him and ran into the bathroom. The complainant disclosed another instance with appellant involving oral sex and reported that there were several times she observed her father masturbating. The complainant was able to provide sensory details about the instances of abuse she described.

The complainant told Cleveanger the abuse stopped when her mother stopped working at night. The complainant said that her father would try to keep her separated from her mother, and told her father/daughter relationships "are like this."

Hernandez also testified about her daughter's outcry to her. She explained that she did not go to the police because she was afraid that she would be deported or that CPS would take her children away. Hernandez also testified that on more than one occasion when the complainant was between the ages ten and twelve, appellant saw the complainant eating a

banana and commented that she had a "sucking mouth." If the complainant or her sister was taking too long on her bath, appellant would tell Hernandez to go check to make sure the girl "was not playing with her thing." When the complainant wore shorts, appellant would check to see if the shorts were an appropriate length by having the complainant bend over and touch her toes in front of him. After the complainant's outcry, Hernandez became watchful of her daughters. Appellant asked Hernandez whether she was afraid that he was going to rape her girls.

J. Smeltzer, an officer with the Balch Springs police department, testified about her investigation of the offense. Smeltzer was present when Cleveanger conducted the forensic interview with the complainant. During the interview, the complainant described where her father kept the pornography he made her watch and identified one of the movies entitled "Asian Buffet." Smelter went to the complainant's home and spoke with Hernandez. She photographed the inside of the home and retrieved the pornographic movies, including the movie "Asian Buffet" from the location the complainant had described.

During the course of the investigation, Smeltzer also spoke with Ruth Lopez, a friend of the complainant's. Lopez told her that appellant was a "bad man." Lopez had been friends with the complainant since the girls were eight or nine years old, and that she could tell there was something wrong with the complainant. When the complainant finally opened up to her, she told Lopez that she had lost her virginity to her father and "that had been going on for a long time."

Smeltzer also testified that based on her observation of the complainant's forensic interview, the complainant "had details that a child her age should not know," and Smeltzer believed she was telling the truth.

Patricia Mulligan, the complainant's school counselor testified that she had been counseling the complainant for a while, and she ultimately confided that her father had sexually abused her. Mulligan contacted CPS. When the complainant told Mulligan about the abuse, she

also told Mulligan that on the preceding Friday, her father caught her holding hands with a boy, was very angry, and had slapped her. On cross-examination, defense counsel inquired whether the counselor thought it strange that complainant made an outcry of abuse the following Monday. The counselor replied, "No. If something pushed her to the point where she was ready to come out with it then, no."

The jury also heard from Kenita Taylor-Holsworth, a counselor at the Children's Advocacy Center. The complainant met with Taylor-Holsworth because there were reports that complainant had been sexually abused and the complainant was experiencing symptoms of depression and "cutting." Taylor-Holsworth explained that "cutting" means using objects like razor blades, knives, needles, or fingernails to cut the skin to create injuries on the body. Taylor-Holsworth believed that complainant's problems included depression and post-traumatic stress disorder. Taylor-Holsworth met with the complainant once a week for about a year and a half. During her sessions with the complainant, Taylor-Holsworth learned that the perpetrator of the abuse was complainant's father.

At some point during the course of therapy, Taylor-Holsworth met with the complainant twice a week. During this time, the complainant was presenting with extreme flashbacks, and had been passing out at school. She was throwing temper tantrums at home where she would lose control and become incredibly angry. These symptoms became so severe that the complainant was missing school because she could not complete the day. Initially, because the complainant was so depressed and suicidal, the counseling was performed on an individual basis. As the complainant's condition improved, she was referred to a group session for girls who had experienced similar issues.

Given the strength of the evidence against appellant, we conclude that the admission of Hernandez's testimony about her sex life with appellant, even if erroneous, was harmless. Appellant's first issue is overruled.

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131212F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SERGIO URESTI, Appellant

No. 05-13-01212-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F-1112542-K.
Opinion delivered by Justice FitzGerald.
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 19th day of December, 2014.